HENDRICKS *against* FRANKLIN.

THIS was an action brought against the defendant, as drawer of a bill of exchange in favour of *Franklin, 'Robinson & Co.* on *Rathbone, Hughes & Duncan,* merchants in *Liverpool,* indorsed by the payees, to one *Townsend,* and by him to the plaintiff.

The bill was protested for non-acceptance and non-payment. In assessing the damages to be recovered by the plaintiff, 2 per cent. was added, over and above the twenty per cent. damages and interest, for the difference of exchange, it being two per cent. above par, when the defendant received notice of the non-payment.

The only question was, whether the plaintiff was entitled to recover the 2 *per cent.* or the rate of exchange.

*Colden,* for the defendant. The only question is, whether on a bill drawn in sterling money, on *England,* and returned for non-payment, the holder is entitled to recover at the rate of exchange, or at par only. There is no established rule or custom here that can govern in this case.* The bill being payable in sterling, which is an imaginary currency, the question is, by what standard is a pound *sterling* to be measured? The act of congress, relative to the collection of duties, establishes the value of a pound ster-

The holder of a bill of exchange, drawn in *New-York* on *Great Britain,* or any other part of *Europe,* and returned protested for non-payment, can recover no more than the contents of the bill, and 20 per cent. damages, with interest, or at the par of exchange. He can recover nothing for the difference between the price of bills, at the time the bill was returned, and the time it was drawn.

* 2 *Johns. Rep.* 335.

* Laws of U. S. vol. 4. p. 279. s. 61.

† Vol. 11. p. 37. Laws U. S. s. 11.

‡ 3 Dallas, 349. in note.

ling at 4 dollars and 44 cents.* Though contained in the act for the collection of duties, the regulation is general. Again, in the act relating to the mint,† the proportional value of gold and silver, in all coins, current in the United States, is fixed at 15 to 1, or 15 pounds of pure silver is made equal, in all payments, to one pound of pure gold. The pound sterling being 20-21 parts of the English guinea, whose value, by the law of the United States, is fixed at 100 cents for every 27 grains, the exact value of the pound sterling, can. be ascertained by an invariable standard. This mode appears to have been adopted by Judge Paterson.‡

The damages to be recovered on a protested bill of exchange are fixed at 20 per cent. They do not depend on the rate of exchange; but the party is bound to pay in specie, or in the same money he received. This rule of damages appears to have originated in Pennsylvania. By an act of the assembly of that colony, passed in 1700, it was enacted, " that if any person or persons, within that province or its territories, shall draw or indorse any bill or bills of exchange, upon any person in England, or other parts of Europe, and the same be returned unpaid, with a legal protest, the drawer thereof, and all others concerned, shall pay or discharge the contents of such bill or bills, with 20 per cent. damages thereof, and so proportionably for greater or lesser sums, in the same specie as such bill or bills were drawn, or current money of the province, equivalent to that which was first paid to the drawer or indorser."§

§ Francis v. Rucker and others, Ambler, 672.

A similar law existed in Rhode-Island,(a) which fixed the damages on protested bills at 10 per cent. The rule established by the law of Pennsylvania, was early adopted in

(a) By an act of the colony of Rhode-Island, passed in 1743, and included in the revised laws of the state, in 1776, it is enacted, " that when any bill or bills of exchange shall be returned from any parts beyond sea, duly protested for non-acceptance or non-payment, the person or persons to whom the same was or were payable, shall be entitled to have and recover of the drawer or drawers, indorser or indorsers, of such bill or bills, ten per cent. damages, over and above the principal sum for which such protested bill or bills was or were drawn, and also lawful interest from - the time such bill or

the state of *New-York*, where it has been the invariable practice ever since.

A similar usage prevails in *England*, in regard to bills drawn on *India*. Where a bill is returned protested from *India*, it is the constant practice to allow ten shillings *per pagoda*, which includes interest, re-exchange, and all other charges.* No question is made about the rate of exchange. The rule here, fixing the damages at 20 per cent. was adopted, instead of any demand for re-exchange, which it would have been difficult, if not impossible, to ascertain; for such is the course of trade between *Great Britain* and the *United States*, and between *Great Britain* and *India*, that merchants in *Great Britain*, can very rarely have occasion to draw bills on this country, or on *India*.

It may be said, that the money is to be remitted to *England*, and that, therefore, the holder has a right to purchase another bill here; but that is not the case. When a bill is dishonoured in *England*, the holder has a right to *redraw* on the person who remitted the bill, or to purchase a bill there, and the difference or premium he would have to pay, would be the *re-exchange;* and it is to avoid all questions about this re-exchange, that the 20 per cent. damages are allowed here. The drawer of a protested bill is to pay the contents of the bill, and the 20 per cent. with interest, in the current money of the *United States*. He has no concern with any rate of exchange. To show how unreasonable and inconvenient the present demand is, suppose a person purchases a bill for 100*l*. sterling on *London*, at 50 per cent. above par, for which he pays 666 dollars and 66 cents, and when the bill is returned, the rate of exchange should continue the same, the drawer would be obliged to pay 888 dollars and 88 cents; but if the exchange should happen to be 50 per cent. below par, when the bill is returned, he would have to pay only 270 dollars and 20 cents.

ALBANY,
February, 1809.

Hendricks
v.
Franklin.

* *Auriol* v. *Thomas*, 2 *Term Rep*. 52.

bills of exchange so protested were purchased, until final judgment for the same be obtained, and also the legal charges of protesting said bill or bills, with costs of suit." *Brown* v. *Van Braam*, 3 *Dallas*, 214. 346.

*Brinkerhoff*, contra. The plaintiff claims the 2 per cent. or the rate of exchange, on the authority of a long established and invariable usage among merchants. By the regulations of the chamber of commerce in this city, published many years ago, when a bill is returned protested from *Europe*, the drawer is to pay, not only the 20 per cent. damages, but the *rate of exchange*. The money is to be paid in *sterling*, and the value of that sterling is the price which a bill costs at the time, when the bill is returned.

*Colden*, in reply. The regulations of the chamber of commerce are of no legal authority. They do not establish any custom or usage which can have the force of law. That institution has no binding authority, nor are its regulations to be regarded in a court of law.

It is not to be presumed, that another bill is always to be purchased and remitted in the place of the one returned. The presumption should be, that the holder in *Europe* re-draws on this country for the amount. It is probable, often, that the creditor is here, and means to stay here; there would be no justice, then, in paying him the 20 per cent. damages, and 8 per cent. more for the price of bills above par.

SPENCER, J. delivered the opinion of the court. In this case, the question is, what damages the plaintiff, who is the indorsee of a foreign bill of exchange, of which the defendant is the drawer, and which was returned protested for non-acceptance and non-payment, is entitled to recover; the plaintiff contending, that he has a right to recover, as well the principal and interest, as also 20 per cent. damages, and an additional 2 per cent. as the difference of exchange, between the time of negotiating the bill, and notice of the non-payment to the defendant, by way of re-exchange. The payment of this 2 per cent. the defendant resists.

The right to recover 20 per cent. damages on the protest of a foreign bill of exchange, rests with us on immemorial

commercial usage, sanctioned by a long course of judicial decisions. In *Great Britain** there is no such usage, and hence, there, the difference of exchange is always taken into consideration, and their courts of justice allow for the usual rate of re-exchange upon the protest of a foreign bill. In *Pennsylvania*, as early as the year 1700, the legislature enacted, that if any person within that province should draw or indorse any bill of exchange upon any person in *England*, or other parts of *Europe*, and the same be returned back unpaid, with a legal protest, the drawer and all concerned should pay the contents of the bill, together with 20 per cent. advance for the damage thereof, in the same specie as the bill was drawn, or current money of that province, equivalent to that which was first paid to the drawer or indorser. It is presumed, that our rule to allow 20 per cent. on the protest of a foreign bill, was originally coextensive with the rule thus established in *Pennsylvania*, and that the same reasons induced both rules. The 20 per cent. was in lieu of damages, in case of re-exchange, and because there was no course of exchange from *London* to *New-York*, and to avoid the constant uncertainty and fluctuation of exchange. If these were not the inducements to the allowance of such very heavy damages, as 20 per cent. I confess myself unable to discover them. It certainly could not be intended merely as a mulct, nor with any other view than to remunerate the party for all his damages in being disappointed in the honouring of his bill. It is not pretended, that this claim for a re-exchange, or more properly for the difference in the price of bills at one time and another, has ever been recognised in this state, by any judicial decision. The chamber of commerce, it seems, provide, in their regulations, for this difference in the price of bills, between the time a bill has been purchased, and notice of its dishonour; and I understand that merchants regulate themselves, by the rules of the chamber of commerce. This, however, cannot make the law; the usage is too recent, and too unsupported by judicial countenance, to produce the consequences contended for. I understand that it has in-

ALBANY,
February, 1809.

Hendricks
v.
Franklin.

* 2 H. Bl. 378.

variably been the practice of the clerk of this court, in assessing damages on protested bills, to give the principal, interest, and 20 per cent. damages, and no more. In my opinion, the 20 per cent. is in lieu of all claim for damages in such cases, and the claim for the difference in the price of the bills, cannot be supported, and, therefore, it must be deducted in this case.*

* *Chit.* 216. 2 *H. Bl.* 378. *Amb.* 674. 2 *Term Rep.* 52.