The DELAWARE INSURANCE COMPANY *against* DELAUNIE.

1811.

*Philadelphia,*
*Saturday,*
*January 5.*

3b 295
186 397

THIS was an action for money had and received, and money paid, laid out and expended, in which the following case was stated for the opinion of the court:

" The *Sampson*, captain *Phippen*, having sailed for the *Havanna*, was taken by a *British* vessel on or about the 1st of *October* 1805, carried into *New Providence*, and there libelled as prize. The amount of the several shipments on board was as follows:

| | | | | | | |
|---|---|---|---|---|---|---|
| P. *Delaunie* the defendant | - | - | - | $ 20,082 | |
| *J. W. Foussat* | - | - | - | - | 33,915 | |
| *J. Dabadie* | - | - | - | - | 3,766 | |
| *J. S. Duval* | - | - | - | - | 1,905 | 81 |
| *J. Warder* and son | - | - | - | - | 3,029 | 40 |

" The following insurances on vessel, freight, and cargo were made:

1. By the plaintiffs in this action,
   On the ship, owned by *Man* and *Foussat* - $ 10,000
   On goods for *J. Warder* and son - - - - 3,240
      for *J. Dabadie* - - - - 3,994
      for *J. S. Duval* - - - - 2,020
2. By the *North American* Insurance Company,
   On freight - - - - - 4,800
3. By private underwriters on freight - - 3,200
   To which add the defendant's goods* - - - 20,082
   *J. W. Foussat's* ditto - - - - - 33,915
              81,251

The owner of goods chargeable with general average, is personally liable for the amount of his contribution, notwithstanding he has abandoned to the underwriters.

The supercargo of all the shipments *but one* on board a vessel, and having also the management of the vessel, joined with the captain in putting in a claim for the ship and entire cargo, on their being captured and libelled as prize; and upon the acquittal of the particular adventure, he received it subject to the payment of all the costs, expenses, and counsel fees, arising from the capture and trial, which he disbursed out of the proceeds. *Held,* that he was intitled to an allowance of those costs, &c.

against the owner, although the owner was in law chargeable only with a part of them.

In cases where interest is not of course, but depends on the conduct of the parties, if the defendant before suit offers to pay as much as is due, and the plaintiff refuses to receive it, the defendant is not liable to pay interest. But if the plaintiff insists on too much, and the defendant offers too little, there is a necessity for the suit, and the defendant must pay interest.

---

* Insured by the Union Insurance Company, &c. and abandoned to them before this action was brought.

"The several persons insured, abandoned their respective interests, and, except the defendant, have been paid for the same as for a total loss, and have made full cessions of the property so insured.

"At *New Providence*, the defendant (who was supercargo of all the shipments except that of *J. Warder* and son, and also had the management of the vessel) and the captain of the vessel interposed a claim for the ship and the whole cargo; but the ship and that part of the cargo which belonged to the defendant, and to *J. W. Foussat*, were condemned.

"The shipments of Messrs. *Dabadie* and *Duval* were reserved for further proof, and finally acquitted.

"The shipment of *J. Warder* and son was acquitted in the first instance.

"This shipment was on its acquittal delivered to the defendant, on his paying or securing to be paid all the costs and expenses in consequence of the capture, trial and proceedings. He placed it in the hands of one *Perpal*, as his agent, to dispose of for the purpose aforesaid, and for the benefit of the concerned. *Perpal* made sale of it, and its net proceeds amounted to 1025*l*. 8*s*. 3*d.*, *New Prov.* currency, equal to 2568 dols. 53 cts. Out of this sum Mr. *Perpal*, made the payments mentioned in the annexed account amounting to* 2243 dols. 53 cts. and he paid the balance 325 dols. to the defendant.

"The items in the annexed account are admitted to be right, (as to amount, but without affecting the legal questions submitted to the court) except the charges for sea stores, homeward passages, and expenses from *Port Penn*, amounting to 85 dols.

"On the return of the defendant from *New Providence*, *John W. Foussat* on the 25th *Sept.* 1805, paid to him the sum of 827 dols. 60 cts. as his (*Foussat's*) proportion of general average.

"Judgment is to be entered for the plaintiffs generally, subject to the decision of the court on the following ques-

* This account having been mislaid, an abstract of it could not be obtained. The items paid by *Perpal* were costs of court, counsel fees, and other expenses arising out of the capture and trial.

tions: 1. Whether on such facts as shall be laid before the court, the plaintiffs are intitled to interest. 2. Whether the defendant is intitled to retain the proportion of general average chargeable on the insurances made by the private underwriters, the North America Insurance Company, and by the Union Insurance Company, on the defendant's goods. If when the opinion of the court is given, there shall be any disagreement with respect to the balance due, it shall be settled by *John Donnaldson*."

The additional facts laid before the court, upon the question of interest, were contained in the deposition of *P. B. Duplessis*, who swore that shortly before the bringing of this action, which was in *August* 1806, he had offered in behalf of *Delaunie* to pay the plaintiffs 1411 dollars, and some cents, including Mr. *Foussat's* proportion of average, according to an account made out for the defendant by an accountant; and that he tendered bank bills to that amount to the president of the Delaware Office, and offered to pay to the amount of 500 dollars more, which he had in his pocket of his own money, provided the plaintiffs would come to a settlement, and it should be found that they were intitled to it. But the plaintiffs demanded twenty-six or twenty-seven hundred dollars, and refused to take a cent less.

The sum offered, excluded the general average due by the defendant himself, and the amount of costs and expenses paid out of *Warder and son's* shipment at *New Providence*. It included *Foussat's* average, and the balance received from *Perpal*, deducting the expenses referred to in the case.

The sum demanded, included *Foussat's* proportion of average, the whole amount of *Warder's* shipment (deducting the general average payable by the plaintiffs), and the average due by the defendant himself.

*Condy* and *Rawle* for the plaintiffs reversed the order of the questions, and argued, 1. That the defendant could not retain, or in other words, claim an allowance for the general average of any parties except those represented by the plaintiffs. The circumstance of his having received *Warder and son's* shipment subject to the payment of the whole, is of no

impoﬀtance. He had no authority to receive it at all. He was not the agent for this adventure, nor of the plaintiffs. Before abandonment their goods were liable only for their own debt; and it is clear that after an abandonment to several underwriters, they are not to be considered as joint owners, so that either they or their property can be held responsible for each other's obligations. *United Insurance Company* v. *Scott* (a), *Holmes* v. *The United Insurance Company* (b). It was not the duty of the supercargo to interpose a claim for *Warder and son*. The captain alone had authority to do this, and to receive the adventure acquitted, in consequence of there not being a special agent. Any agreement by the defendant to subject *Warder and son's* goods to costs and charges to which they were not legally exposed, can therefore have no effect. They were bound to pay at the utmost, only a proportion of the costs. Counsel fees are not costs. Indeed, unless there is something grossly fraudulent in the case, the claimant is not exposed even to the costs of court, upon acquittal; and it does not appear that the court of Admiralty thought there was any thing of that sort in the claim for the *Warders*, or that they restored the goods subject to costs. 1 *Rob. Adm. Rep. introd.* 5. 6. But how can the defendant avoid *refunding* what has been paid for his proportion of average? There is no doubt that upon general principles he is liable in this action to the plaintiffs, whose goods, abandoned to them by the *Warders*, have paid the whole. *Birkley* v. *Presgrave.* (c) But his having abandoned his own goods to underwriters, is supposed to create an exception. Certainly we are not compelled to look to the underwriters; we are not bound to try his action upon the policy, nor in point of law can we do it. *Non constat* that he has any claim on them, although we have a very good one on him. Nor are we compelled to look to the goods saved. If general average is due by goods, the law raises a promise by the owner, which is the foundation of a personal suit.

2. As to interest. The tender was 1411 dollars and some cents; and if it had been relied on, the money should have been brought into court; 6 *Bac. Abr.* 462. *H. Tender; for*

(a) 1 *Johns,* 106.        (b) 2 *Johns. Ca.* 329.        (c) 1 *East.* 220.

where a debt is not discharged by a tender, the party must shew himself still ready. But it was clearly too small, by excluding the defendant's proportion of average, and by including sea stores and passage money home; and if the plaintiffs are intitled to more than the sum tendered, they ought to have interest upon the whole from the commencement of the action.

*Lewis* for the defendant. 1. The claim saved the goods of *Warder and son*, for without it there can be no doubt they would have been condemned; and the defendant had a right to make it, from his general character of supercargo for all the rest, and also from having the management of the vessel. When the goods were acquitted and restored in pursuance of the claim, he took them *cum onere*. The case states it. It states the payment to have been the condition of the delivery; in effect, it states that only the balance beyond the charges was delivered to him. How then can he be charged with more? If however he was wrong in thus receiving the goods, the form of action affirms his acts. *Bull. N. P.* 128., *Eastwick* v. *Hugg*. (*a*) But he was right. He joined the captain in a claim for the whole, and had a lien upon every part of the cargo for all the expenses of the trial. He either gave security, or obtained it, for all the costs, or he could not have made a claim. In either case, he was intitled to apply *Warder's* shipment to pay the whole. As to his own proportion of the average, since he has abandoned to the underwriters, they and not he ought to answer the contribution. General average gives a lien. It is payable by the goods, unless they are accepted subject to the lien, in which case a promise may be implied, and an action may be sustained upon it. But unless there is such an acceptance, there is nothing from which the law can raise a promise. The underwriter, to whom the goods are abandoned, must see to the contribution to which they are subject. He takes the goods, and he gets the benefit of the average.

2. As to interest. We do not rely upon the tender and refusal. This is not the case of a contract carrying interest

(*a*) 1 *Dall.* 223.

expressly or from its nature. Interest here must be in the nature of damages for improperly withholding the plaintiff's money; and then the only question is, has he acted properly, has he been willing to settle the account upon just principles, and have the plaintiffs refused it? There can be no doubt of it. The plaintiffs refused to come to a settlement, but demanded payment of their whole claim, and would not look at any settlement but their own. Under such circumstances they are not intitled to interest.

TILGHMAN C. J. delivered the court's opinion.

Two questions are submitted to the court upon the case stated. 1. Whether the defendant is intitled to retain the proportion of general average, chargeable on the insurances made by the private underwriters, by the North America Insurance Company, and by the Union Insurance Company on the defendant's goods? 2. Whether on the facts laid before the court, the plaintiffs are intitled to interest?

The goods of *Warder and son*, in whose place the plaintiffs stand, were acquitted; but they were afterwards sold by the defendant's agent, and the proceeds applied to the payment of sundry costs, charges and expenses, which constitute the subject of general average. Mr. *Foussat*, one of the persons liable to contribute to this average, has paid his proportion to the defendant. There is no doubt therefore but the defendant is answerable to the plaintiffs for the amount received of *Foussat*. Nor do I think there is any doubt of his being answerable for the average originally due from himself, on account of his own goods. It is no answer, to say, that he has abandoned to his underwriters, and the plaintiffs must look to them. The defendant was originally answerable to *Warder and son*, and consequently to the plaintiffs who represent them, for the amount of his contribution. It is conceded that an action at law would have lain against him, according to the decision in *Birkley* v. *Presgrave*. 1 *East* 220. Being once answerable, it was not in his power to throw off that responsibility, by any act of his own. His abandonment was his own voluntary act. He therefore remains answerable to the plaintiffs, and must look to the underwriters for his indemnity.

It is next to be considered, whether the defendant may retain on account of the contributions due from other persons. The plaintiffs say he cannot, because he was no agent of *Warder's*, and had no right to sell their goods, and apply their money without their consent. On the other hand the defendant contends, that from the nature of the case, having joined the captain in the claim and defence of vessel and cargo, he had a lien on every part of the cargo for the amount of all the expenses, and that the court of Admiralty would not liberate any of the cargo, till the whole costs were paid. This does not seem to be denied by the plaintiffs' counsel, so far as concerns the *costs* of the court; but they say that these costs bear a small proportion to the fees paid to counsel &c., which are not properly costs of suit. There will be no occasion for entering into this question, because it appears, from the state of the case, that the goods of *Warder and son*, were only delivered to the defendant, " on his paying, " or securing to be paid, all the costs and expenses, in " consequence of the capture, trial and proceedings." Who it was that withheld the goods, or exacted this condition, does not appear. But it cannot be said that the defendant received for the use of the plaintiffs, that part of the money, which he was obliged to apply to other uses, by the condition annexed to the delivery of the goods. The defendant had therefore a right to retain the full amount of all costs and expenses, except that part which was due from himself.

2. As to interest. The defendant is not held to the same strictness in resisting the claim to interest, as he would be on a plea of tender and refusal. Interest, in actions like the present, is not a matter of course, but depends on the conduct of the parties. If the defendant has delayed payment improperly, he is chargeable with interest. On the other hand, the plaintiff may forfeit his claim to interest, by unreasonable behaviour. If the defendant offers to pay as much as in justice he ought, and the plaintiff refuses to receive it, and brings an action, it would be wrong that the defendant should pay full interest, after being driven to the expense of defending himself against an unjust suit. But in the present case, the fault does not seem to lie altogether on

1811.

DELAWARE
INS. CO.
*v.*
DELAUNIE.

either side. The plaintiffs insisted on too much, and the defendant offered too little. There was a necessity therefore for a suit. That being the case, and there being no reason to suppose that the defendant has not made use of the money, we think he should be chargeable with interest.

Judgment for plaintiffs.