POOR (CHESAPEAKE & O. CANAL CO. v.). See Case No. 2,651.

POOR (SMITH v.). See Case No. 13,093.

POOR (WILLIAMS v.). See Case No. 17,732.

## Case No. 11,273.

### POPE et al. v. BARRETT.

[1 Mason, 117.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1816.

CONSIGNEE'S LIABILITY FOR FAILING TO REMIT—DAMAGES—ASSUMPSIT—INTEREST.

1. In assumpsit against a consignee or bailiff of goods "to sell the same and render a reasonable account," damages, for not remitting when exchange was favorable, are not allowable.

[Cited in New Orleans Ins. Ass'n v. Piaggio, 16 Wall. (83 U. S.) 386.]

2. Quære, how it would be if there was a special promise to remit, and a breach assigned in the declaration?

[Cited in brief in Weed v. Marsh, 14 Vt. 82.]

3. Interest is allowable in such cases, and also in actions for money had and received, from the time of a demand made, where the defendant has refused to account or to make payment, or has converted the money to his own use.

[Cited in New Orleans Ins. Ass'n v. Piaggio, 16 Wall. (83 U. S.) 386.]

Assumpsit. The first count was for $7,000, money had and received of the plaintiffs [Henry Pope and others]. The second count charged, that the defendant [Charles Barrett]

---

[1] [Reported by William P. Mason, Esq.]

was bailiff of the plaintiffs of 23 packages of goods of the value of $7,000 "to sell and dispose thereof to the best advantage," and in consideration thereof "promised the plaintiffs to render them a reasonable account thereof on demand," and alleged that the defendant, though specially requested, had not rendered any reasonable account. The plea was the general issue. At the trial it appeared among other things in evidence, that the goods in question were consigned by the plaintiffs, who were merchants in Manchester in England, to one George Barrett, the brother and partner of the defendant, for sale and remittance, in the year 1811. The goods were first shipped to Canada, but were intended ultimately for sale in the United States. In 1812, George Barrett went to New Orleans and left the whole business under the agency of the partnership. George Barrett died in that year during his absence on the journey, leaving the defendant surviving partner of the firm, who assumed the agency, and sold, or directed the goods to be sold. The defendant had been repeatedly called on by the plaintiffs to account for the sales, and to remit the proceeds; but had declined to render any account, and offered no evidence whatsoever, either to excuse or defend himself against the action, relying altogether upon the supposed defect of the plaintiffs' evidence to sustain their case. The principal evidence of the plaintiffs arose from letters written by the defendant to the plaintiffs, or to the plaintiffs' attorney. In the latter he admitted, that the net proceeds of the sales, yet coming to the plaintiffs, would be about £1,200 sterling, but declined to go into any explanation, in detail, of the sales, or of the money, which had been actually received by him; and excused himself by pretences, that the means of an exact statement were not then in his possession. The invoice value of the twenty-three packages of goods was £1,648. 4s. 10d. sterling; from this a deduction was admitted of £100. 14s. 3d., and £119. 12s. for remittances made by George Barrett in his lifetime. The action was brought to recover the balance of £1,421. 18s. 7d. sterling, and also the sum of $1,148, which had been received by the defendant under a special power of attorney, as part of a debt due from Messrs. Bond and Prentiss to the plaintiffs. There was no dispute, that this last sum was due, and the defendant declared himself to have been always ready to pay it.

R. G. Amory, for plaintiffs, contended, that they were not only entitled to the principal sums and interest, but also to fifteen per cent. for the difference of exchange; which would have been a profit to the plaintiffs, if the remittance had been made at the time when the defendant ought to have remitted the money, received from the sales of the twenty-three packages. He claimed interest on the £1,421. 18s. 7d. sterling and $1,148, from the first of January, 1814, and the rate

of exchange in England, which, at the same period, was fifteen per cent. below par.

Mr. Cooke, for defendant, on the other hand, contended, that no interest was due, because the plaintiffs had not proved any direct demand or refusal, before the commencement of the suit; nor any specific period of time, when the sales of the goods were made, and the proceeds received by the defendant. And he further contended, that, for the same reasons, no difference of exchange ought to be allowed. And that as there was no special promise to remit the proceeds, or special damages laid in the declaration, even if a difference of exchange were, in a case like this, recoverable at law, no recovery could be here had for want of an appropriate declaration.

STORY, Circuit Justice, after summing up the facts, directed the jury, that if they were satisfied from the evidence, that the defendant became the agent, consignee, or factor of the plaintiffs (which appeared to him very strongly in proof), then, as the defendant had utterly refused to render any account of his sales, that the most unfavorable presumptions, which the evidence would admit of, ought to be made against him, in respect to the amount and value of the goods sold and unaccounted for. That as the case was principally supported by the written confessions of the defendant, those confessions were to be taken and weighed all together; and damages ought to be given to the full value of the goods, which came into the hands of the defendant, deducting therefrom all proper charges for disbursements, commissions, and expenses. And that interest ought to be allowed upon the amount, so found due, from the time of the actual sales, or the earliest subsequent opportunity to remit, up to the time of giving their verdict. That if the time of the actual sales was not distinctly proved, they ought to adopt that period, which, under all the circumstances of the case, seemed reasonable. That the defendant was not absolutely bound to remit during the war with England; for it might involve him in the penalty of illegal intercourse. But that he was bound to remit at as early a period after peace, as the case would admit. That under all the circumstances, perhaps it might be considered, that the sales were not all completed, and the remittances could not have been made earlier than August, 1815; and if they were of that opinion, interest ought to be calculated from that date.

In respect to the damages claimed under the special count, to account for the loss occasioned by the difference of exchange in not remitting the money, he doubted whether, as that count was framed, such an item of damages was admissible; as a promise to account upon a consignment to sell and dispose of the goods to the best advantage,

did not seem to him to include a promise to remit the proceeds. Nevertheless, as the plaintiffs claimed such an allowance, for the purposes of this trial, he would direct them, that if they were satisfied, that, according to mercantile usage, when goods were received on consignment to sell and account for the same, the consignee, after sale, was bound to remit the net proceeds to his employer, without any special direction, and to allow him the benefit of the rate of exchange on the remittance; then they might add the item of the difference of exchange to the amount due to the plaintiffs.

The jury found a verdict for the plaintiffs for $9,335.92; and, upon an inquiry from the court, at the suggestion of the defendant's counsel, they declared, that they had allowed twelve and a half per cent. for the difference of exchange, considering it perfectly clear, that, according to mercantile usages. upon foreign consignments, the remittances ought to have been made, and the benefit of the then state of exchange allowed to the consignee. They added, that they had given the plaintiffs the full invoice value of the goods, without any deductions for commissions or charges, because, taking all the circumstances of the case together, they were satisfied, as the defendant had rendered no account, and still refused to render any, that the goods sold for more than the invoice value, and the charges and commissions added to it.

After verdict, Mr. Cooke moved for a new trial: (1) For misdirection of the court, as to the allowance of the difference of exchange and interest. (2) Because the jury had given excessive damages. Upon the first ground he urged the same reasons that he had urged before at the trial, and further, that no interest ought to have been allowed on the $1,148, because it was received under a special authority, and there was no promise to remit; and that interest ought not to have been allowed without a special count for that purpose. That the counts in the declaration stated the promises to be made on the second day of January, 1813, and no money subsequently received could be recovered in this action, as it would not be a bar to any subsequent action. Upon the second point, he relied in addition upon the fact, that the jury had allowed the full invoice value of the goods, without any deduction for disbursements and commissions.

Mr. Amory, e contra, insisted that the defendant in fact promised to remit, as appeared by the original correspondence. That if the party was to account, the manner of accounting depended upon the circumstances of the case, and the original instructions. That however special those instructions might be, it was sufficient to charge in the declaration, that the party had promised to account generally, and the special

manner was mere matter of evidence; and that all damages for not accounting might be recovered, without laying the special damages in the declaration. That the interest was clearly allowable. The defendant had utterly refused to do his duty, and having kept the money of the plaintiffs, he was bound to pay interest for it; and that the uniform practice of the supreme court of Massachusetts was to allow interest in such cases. Wood v. Robbins, 11 Mass. 504.

STORY, Circuit Justice. The first question respects the direction of the court, as to the allowance of the profit, which would have accrued to the plaintiffs, if the proceeds of the sales of the consignments had been remitted to them in due season. At the trial, I felt great doubts if this item could be properly allowed in damages, under the declaration. It was clearly inadmissible under the count for money had and received. The special count, after stating the goods to have been received, "to sell and dispose thereof to the best advantage," and the promise, by the defendant, to render to the plaintiffs a reasonable account thereof on demand, assigns as a breach, the refusal to render such an account. There is no averment, that the defendant promised to remit the proceeds; and of course no breach assigned, or special damages claimed, for the violation of any such promise. Upon farther reflection since the argument, I am satisfied, that my doubts at the trial were well founded. Assuming that the plaintiffs could entitle themselves to the difference of exchange, upon a count properly formed for that purpose, from the neglect to remit in due season; the claim cannot be sustained under the present declaration. The contract here stated is merely to sell the goods, and render a reasonable account of the sales. Upon this count the defendant was not bound to remit; and if not so bound, he could not be liable for any loss occasioned by his omission to make a remittance. It is no sufficient answer, that the defendant would have been completely exonerated, if he had remitted the proceeds, by purchasing a bill of exchange; or that the plaintiffs, by the omission, have lost a profit, which they might otherwise have obtained. The defendant has a right to say, non in hæce fœdera veni. It is not for every possible loss, that the promisor renders himself liable by a breach of his promise. A party may, by the non-payment of money due to him, lose the opportunity of an advantageous bargain; but such a loss is not recoverable in an action for the money due. Upon every consignment of goods for sale, the law raises a promise to account (Wilkin v. Wilkin, 1 Salk. 9; Carth. 89; Topham v. Braddick, 1 Taunt. 572); but that promise is completely satisfied by payment over of the proceeds of the sale, upon demand of the consignor. If the usage of trade, or a special contract, bind the party to remit, it is an obligation, which the law does not enforce, unless averred in the declaration, and put in issue by the parties. Nor is it true, as supposed in the argument, that under a declaration to render a reasonable account, the plaintiff might give in evidence a contract to account in a special manner. However true this doctrine may be in actions of account, in respect to which special reasons may apply (Robsert v. Andrews, Cro. Eliz. 82; Godfrey v. Saunders, 3 Wils. 73), in actions of assumpsit the contract must be proved as laid; and if the undertaking be special, it must be so stated, or the variance will be fatal. If the law were otherwise, it would not help the present case; for a promise to remit is not, in the intendment of law, a promise to account in a special manner. It is to all important purposes, an independent and distinct part of the contract.

There might, indeed, be some question, whether, under a special count, the loss of the difference of exchange would be recoverable. The claim is founded on a rule, which will not always work equal justice. If the exchange be below par, then if the defendant does not remit, the plaintiff may have the difference, because the rule works in his favor. But if the exchange be above par, and the defendant does not remit, shall the latter be entitled to a proportionate reduction of the damages? If so, then the defendant gains a profit by his fraud or negligence; if not, then the rule has not that universality, which commends it for general adoption. However, on this I give no opinion. It is sufficient to decide what is necessarily before us. And my opinion accordingly is, that, upon this declaration, as framed, this item ought to be expunged from the damages. I will only add, that except in actions upon foreign bills of exchange, I have not found an instance, where re-exchange, or the difference of exchange, has been allowed in damages; and in cases of mere debts, it has been expressly denied. Mellish v. Simeon, 2 H. Bl. 378; Hendricks v. Franklin, 4 Johns. 119; Martin v. Franklin, Id. 124. The very form of declaring in assumpsit against a bailiff or factor, is of comparatively modern origin, as a substitute for the action of account. Wilkin v. Wilkin, 1 Salk. 9; Carth. 89; Poulter v. Cornwall, 1 Salk. 9; Bull, N. P. 148; Topham v. Braddick, 1 Taunt. 572. And in an action of account, a bailiff ad merchandizandum could not have been made chargeable, but for profits actually received in the way of merchandise. Com. Dig. "Accompt," E, 10; 1 Rolle, Abr. 125 (O.) pl. 35, 36, 40. Profits upon remittances do not seem ever to have been claimed or allowed. Godfrey v. Saunders, 3 Wils. 73; Topham v. Braddick, 1 Taunt. 572.

The next question is, as to the allowance of interest upon the sums found due to the plaintiffs. In the English decisions there

has been a singular fluctuation of opinion. The rule, at present established in England, seems to be, not to allow interest except in cases, where there is a written contract for the payment of money on a certain day; or where there has been an express promise to pay interest; or where, from the course of dealing betwen the parties, such a promise may be implied; or where it can be proved, that the money has been used, and interest has been actually made. De Havilland v. Bowerbank, 1 Camp. 50, 51; De Bernales v. Fuller, 2 Camp. 426, 428, note; Calton v. Bragg, 15 East, 223; Slack v. Lowell, 3 Taunt. 157; Gwyn v. Godby, 4 Taunt. 346; Middleton v. Gill, Id. 298; Marshall v. Poole; 13 East, 98. And see Mitchell v. Miniken, 6 Taunt. 117. In the United States a more liberal policy has been pursued; and interest has been allowed in a variety of cases, where it would have been refused by the English courts. Without going over the cases, which are ably collected by Mr. Justice Putnam, in delivering the opinion of the court in Wood v. Robbins, 11 Mass. 504, it seems to me, that the principles are perfectly sound and equitable, which assert, that interest is payable, when a man receives the property or money of another, and holds it against his consent, or converts it to his own use, or improperly refuses payment after a demand. Com. v. Crevor, 3 Bin. 121; Delaware Ins. Co. v. Delaunie, 3 Bin. 295; People v. Gasherie, 9 Johns. 71. In the present case it may be admitted, that no interest was due until after a demand made; or until gross laches and delay of payment, contrary to the express or implied contract of the parties. In respect to the special count, no interest could accrue until after a special demand of an account; for until that was made, the party was in no default. Topham v. Braddick, 1 Taunt. 572. But there is the strongest presumptive evidence of such a demand, long before the period at which the court directed the jury to allow interest. In respect to the count for money had and received, there is no difficulty in sustaining the claim for interest. The money, received from Messrs. Bond and Prentiss, was in the hands of the defendant at least a year before the period above stated; and, from the circumstances of the case, a demand and gross laches may be reasonably presumed against the defendant. There was also, from the same circumstances, a strong presumption, that the goods on consignment had been all sold, and the net proceeds received by the defendant, long before the same period. The defendant utterly refused to render any account of the sales, or to pay over the proceeds, after an explicit demand for this purpose. There was, therefore, not only a gross departure from duty, which would have authorized the jury to give interest; but the

jury had a right to infer, from the conduct of the defendant, that he had unjustifiably converted the money to his own use. This is not all. By the contract of consignment, as well as by the usage of trade, as found by the jury, the defendant was bound to remit the proceeds; and by his neglect so to do, he has justly incurred the payment of interest; for this, at least, is a loss actually sustained by the plaintiffs. In every view, therefore, of this case, the jury were fully justified in making an allowance of interest from August, 1815; for there was a strong presumption, that the money was, after a demand, withheld against the plaintiffs' consent; that it was converted to the defendant's own use; and that there was a gross and improper refusal of payment. In estimating the interest, however, it appears, that the jury have by mistake, allowed a year's interest more, than according to the direction of the court, they intended to allow. This sum must, therefore, be deducted from the verdict.

The defendant also complains of the verdict, because the jury have allowed the full amount of the invoice value of the goods, without any deduction for commissions or charges. The jury were expressly directed to make such an allowance, and have assigned as a reason for giving the full invoice value, that, from the circumstances of the case, the goods having ultimately come to a high market after the peace, and the defendant having refused to render any account, they were satisfied, that they sold for a sum beyond the invoice value, sufficient to satisfy all charges. I cannot say, that the verdict was not fully justified by the facts of the case. There was the most reprehensible and studied refusal of the defendant to render any account, even at the trial. He contented himself with a profound silence, as to evidence of his own conduct, leaving the plaintiffs to grope their way through the cause, by doubtful and glimmering lights, gathered from his own imperfect confessions. If he has suffered by the verdict, it has been his own folly and gross negligence; and if it were properly within the province of a court to weigh in minute scales the items of damages (which it certainly is not), I should have been at a loss to conceive a reason for setting aside a verdict, so perfectly, in this case, consistent with the principles of equity and good faith.

Upon the whole, there must be a new trial, unless the plaintiffs will consent to remit the sum allowed for the difference of exchange, and the extra interest. If these sums are remitted, neither law nor justice requires the court to accede to the motion.