### SWITZER & SWITZER vs. CONNETT.

1. An agent is bound to execute the orders of his principal, whenever for a valuable considera-tion he has undertaken to perform them, unless prevented by some unavoidable accident, without any default on his part, unless the instructions require him to do an illegal or immoral act.

2. Any agent is responsible for the full loss, occasioned by any violation of his duties to his principal, either by exceeding or disregarding instructions, and it is no defence that he intended to act for the benefit of his principal.

3. Where goods are consigned to a factor to be sold at a fixed price, if he dispose of them at a less price, he is responsible to his principal for the price fixed him, and is to be regarded as a purchaser at that price, and not as a mere stranger guilty of a tortious conversion.

## APPEAL from St. Louis Court of Common Pleas.

### Statement of the Case.

This was assumpsit in the St. Louis Court of Common Pleas by Connett vs. the Switzers', a mercantile firm at St. Louis. Connett in May, 1844, put into the hands of the Switzer's a quantity of bale rope and packing yarn, to be sold on commission at a limit of six and a half cents per pound. It was sold for less, but at the best market price at the time, and at as high a price as could have been gotten for it any time from the day it was received, down to near the time of trial. It was sold in January and February, 1845, at New Orleans, whither it had been shipped with the consent of Connett for sale there, at the same limit. This suit was commenced for the purpose of recovering the difference between the actual proceeds of the sale, and what they would have been if sold at the limit. The instructions given and refused lay down the rule of damages in such cases to be the price at which the sales were limited. Exceptions were taken by defendants below, and after a finding by the jury in conformity with the instructions, a new trial was moved for and overruled, and exceptions taken to that decision.

CROCKETT & BRIGGS, *for Appellants, insist:*

Where goods are put into the hands of a commission merchant for sale at a limit, and he sells them without fraud for the best market price, he is liable only for the highest price of them at any time before the trial, if that be more than the actual sales, *and not for the price limited at all events;* 14 Peters, 479, 496—at this last page the court lays down the rule of damages when a factor disobeys orders in sale of goods consigned; Story on Agency, p. 258, sec. 217 & 218; p. 263, sec. 220, 221, 222; Kinne's Law Compendium for April, 1847, p. 104; (7 Alab. R., 335, Anstile & Marshall vs. Crawford,) 1 Brock., 103.

Where a factor sells goods limited in price, at an under value, he is responsible for the actual loss, and not for the limit as the measure of damages; 12 New Hamp. R., 239, Frothingham vs. Everton; see for this case the Law Reporter of May, 1846, also directly in point.

*Switzer & Switzer vs. Connett.*

POLK, *for Appellee, submits:*

That the authorities sustain the view of this question taken by the appellee, and the doctrine asserted in the instruction given to the jury by the Court of Common Pleas; see The Rich. Manufacturing Co. vs. Stark, 4 Mason, 296; Smart vs. Sand, decided July, 1846, in the Com. Pleas in England and reported in the January No., 1847, being No. 3, of vol. 1, new series, and of vol. 3, old series of the Law Journal, published in Philadelphia; 1 Swift's Digest, 332.

MCBRIDE, J., *delivered the opinion of the Court.*

No question arises as to the defendants liability to the plaintiff, as his agent for the sale of the bale rope and packing yarn; but to what extent is he liable, for having sold for a less price than that fixed by his instructions, although the sale was at the highest market price at the time it was made. The defendant insists, that the market price of the articles sold, at the time of sale, is to be the measure of damages; whilst the plaintiff contends, that having instructed him not to sell for less than six and a half cents per pound, he is liable for that sum, although it was not the price obtained, nor the market price at the date of the sale.

Before discussing the point at issue, we shall lay down some general principles regulating the duty of agents towards their principals.

Switzer, as the agent or factor of Connett, was bound to execute the orders of his principal, whenever for a valuable consideration he undertook to perform them, unless he was prevented by some unavoidable calamity or overwhelming force or accident, without any default on his part, and unless the instructions should require him to do an illegal or immoral act, in which case he might violate them with impunity. This duty may arise in various ways, either by express agreement, or by clear implication. The latter arises generally, from the common usage of the particular agency, or from the general modes of dealing between the particular parties, or from the mutual implications arising from the nature and objects of a single transaction.

Whenever an agent violates his duties or obligations to his principal, whether it be by exceeding his authority, or by positive misconduct, or by mere negligence or omission in the proper functions of his agency, or in any other manner, and any loss or damage thereby falls on his principal, he is responsible therefor, and bound to make a full indemnity. And it will constitute no defence for him, that he intended the act to be a benefit to the principal. Indeed in all such cases, the question is not whether the party has acted from good motives and without fraud; but

whether he has done his duty, and acted according to the confidence reposed in him.

The defendant in support of the position assumed by him, refers to Story on Agency, sec. 221, where it is laid down that, "If the goods of the principal are negligently lost or tortiously disposed of by the agent, he is made liable for the actual value of the goods at the time of the loss or conversion." To support the principle reference is made to 3 Whea. R., 560-1; 1 Mason R., 117; 11 Ohio R., 363.

The case in 3 Whea. R., 560-1, was an action for a marine trespass, and the court held that the probable or possible profits of an unfinished voyage afford no rule to estimate the damages, but that the prime cost or value of the property lost, and in case of injury the diminution in value by reason of the injury, with interest thereon, affords the true measure for estimating the damages.

The case in 1 Mason R., 117, was an action of assumpsit against a consignee. The declaration contained a special count avering that the defendant undertook, &c., "*to sell the goods and render a reasonable account.*" And the court held that damages could not be recovered "*for failure to remit when exchange was favorable.*"

The other case referred to by Judge Story, to sustain the text in his book, is in 11 Ohio R., 263. The plaintiff consigned to the defendant a quantity of flour, with instructions not to sell the same for less than $8 per barrel. The defendant sold the greater part of the flour before the arrival of the plaintiff, for about $7 a barrel, and continued to sell at that price whilst the plaintiff remained in New York without objecting on his part; and paid the plaintiff a part of the proceeds of the sales. After the plaintiff left New York, the defendant continued his sales, making regular reports thereof to the plaintiff, until the whole of the flour was disposed of, when the plaintiff drew on the defendant for the balance in his hands. Afterwards floor took a rise in the market, and suit was commenced to recover the difference in price for which the flour was sold, and that to which it subsequently advanced. The court held that the case fell within the principle laid down by Story on Agency, sec. 253. "If an agent should sell goods contrary to his instructions, and the principal should afterwards receive the proceeds without objection, it would amount to a ratification of the sale."

Thus it is seen by reference to the cases cited, that they do not sustain the rule laid down by the author, at least to the unqualified extent stated by him.

The defendant next refers us to 14 Peters R., 479, 496; 13 New Hamp.

Rep., 239; 7 Alaba. R., 335. The first of these cases was written by Judge Story himself, and the other two are based upon the principles asserted by him in his treaties on agency. The facts of neither case, are similar to the facts in this case now before this court; we shall then proceed to examine it according to reason and principle.

Suppose I loan my horse to A, and before he departs with him, he says to me, if I can sell your horse shall I do so? I reply yes, you may sell provided you can obtain $75 for him. Whilst absent he sells my horse for $60, and on his return proffers to pay me $60; may I not decline receiving, and hold him responsible for $75, the price which I placed upon my horse; notwithstanding the $60 obtained may be the full value? Or suppose I ride to town and put my horse in a livery stable, and whilst there the keeper of the stable tells me that there is an individual in the town who is purchasing horses, and that my horse answers the description which he wishes to purchase, and enquires if he may sell him my horse? I reply, he may, provided he can get $100 for the horse. On my return to the stable he offers me $80, stating that he sold my horse for that sum, and that it is the fair market value of the horse; may I not have my action against him, to recover the price fixed by me on my horse? If it be my right or privilege to place a value upon my own property, I certainly can do so, even should the price thus fixed by me, exceed the market value. We hold the affirmative of both these propositions. And where is the difference in principle, between the cases stated and the case under consideration?

There is no pretext that advances had been made on the goods deposited with the defendant, and that he sold them after having given the plaintiff notice to repay the advances, and a failure to do so, or a sale without such notice, for the purpose of meeting acceptances then due, for advances on the consignment; but it is a naked case of disobedience of instruction, whereby the factor, not only without the consent, but in direct opposition to the orders of his principal, divests him of his property.

With due deference to the opinion of the learned tribunals whose decisions we have referred to, and who hold that the measure of damages, in such class of cases, is the market value of the goods thus wrongfully sold, we are constrained to adopt a different rule, and hold that the price put upon the goods by the principal, is to be the criterion of damages. Where is the propriety of placing the principal entirely at the mercy of his factor, in the sale of his goods? The rule can only be based upon the assumption of a tortious conversion of the goods by the factor, and therefore, he is liable only to the extent that a stranger would be, for a

similar act, that is, the fair market value of the goods sold or converted. But sustaining the relation which the factor does towards his principal, and knowing his wishes in reference to the sale of his goods, we think the factor disobeying the orders of his principal, should not be permitted to occupy the equitable ground conceded to a stranger.

If the principal has a right to affix a value to his property, (which cannot be questioned,) and the factor is properly advised thereof, all discretion as to price is withheld from the factor; and if he disposes of the property for a less sum than that limited, he should be regarded and treated as a purchaser himself, at the fixed price.

It is true that generally the market price is the extent of injury which the principal would sustain by a sale of his goods at less than the price limited; but the market price may not compensate him in every instance. Suppose the principal is a manufacturer of bale rope, and has an existing contract, by which he is to obtain, on a certain day, say six months thereafter, six and a half cents for all the bale rope he may have on hand; but desiring if practicable to realize the value of his bale rope at an earlier day, sends it to a factor with instructions to sell it for six and a half cents provided it can be sold for that price, but if not to retain it in his possession. The factor one month before the day of delivery under the foregoing contract, in disregard of his instructions sells the rope for the market price, which is only one half of the price which his principal is to obtain under his contract in one month thereafter. Can it be said that the extent of damage to the principal is only the market price of the bale rope at the time it was sold? Again, the principal believing that an advance would in a short time take place in the price of bale rope, and being in a situation that he can do so, and willing to take the hazard of a rise, sends his rope to a commission merchant, that it may be in the market when the rise takes place, with orders to him not to sell unless he can obtain a fixed price. Yet the factor does sell for a less price, and in a short time thereafter, as was anticipated by his principal, an advance takes place in the price of bale rope by which he might have obtained the price limited. Would the price at which the bale rop was sold (assuming it to be the market price at the time of the sale) compensate the principal for the damage resulting from a disregard of his instruction?

Can the rule be a just or reasonable one which makes no distinction between the liability of an agent, who acts according to the instructions of his principal, and one who acts in utter disregard and violation of instructions? Yet such is the fact, if the rule laid down by Story on Agen-

cy, sec. 221, be correct; because in either case, the principal could only recover the market value of the goods sold. In the one case there is an express contract, between the principal and agent that the goods shall not be sold below a certain price; in the other, the parties not having contracted expressly as to price, the law makes a contract by implication, and fixes the price at that which the goods would bring in the market, at the date of the sale. The principal and agent having a legal right to contract as to price, and having contracted, the law has no office to perform except to enforce the contract as made between the parties.

From what has been said it will be seen that we do not put the case upon the ground of a tortious conversion of the goods of the principal by his agent; if it could be so placed, the rule of damages laid down by Story on Agency, from the necessity of the case would be well enough; but we regard it as an express contract, to sell for the price limited, and hold the agent to a strict performance, or he is to be treated as a purchaser himself, at the price fixed by his principal. A contrary doctrine would render all instructions by the principal nugatory and futile; and so soon as his goods reached the hands of an agent, his authority to control the disposition of them, would be at an end; and the agent might sell at any price he saw proper, being liable only for the market price.

Our attention has been directed to the case of Smart vs. Sand, published in the January number, 1847, of the Law Journal, p. 148, and taken from the "Jurist," a legal periodical published in London, and decided by the Common Pleas of England, June & July, 1846. The syllabus of the case, and it is supported by the opinion, is, that, "where A consigned goods to B, a factor, *for sale and return*, and directed B not to sell them below a certain price, B being in advance on account of said goods, gave notice that if the advances made by him were not repaid, he would sell the goods to repay himself, and he did sell them accordingly below the price limited by A. *Held*, in an action brought by A to recover the amount at which the goods had been limited, that the factor had no right under the circumstances to disobey plaintiff's orders, and that he was liable for the balance."

The principle above laid down is more stringent on the case now before us; for the defendant as heretofore remarked, had made no advances, nor was the plaintiff in arrears even for storage or other incidental charges.

For the foregoing reasons we are of opinion that the judgment of the court below ought to be affirmed, and Judge Scott concurring, the judgment is affirmed.