# Murphy's Appeal.

*An assignment in trust for a preferred creditor, to pay and satisfy in full the sum of $5178, to be paid to her or whoever may be entitled to receive it for her; held under the circumstances not to carry interest from the date of the assignment.*

This was an appeal from the decree of the Court of Common Pleas of *Philadelphia* county, by John Murphy and Placette his wife, late Placette Caze.

Anthony Laussat, the elder, on the 8th June 1819, executed a general assignment to Honoré Fournier, in trust for certain preferred creditors, and afterwards for the benefit of his general creditors.   The material provisions of the assignment were " for the uses following, to wit: after selling and disposing of the property and collecting the debts, from the proceeds thereof,

1.  Upon trust, in the first place, to retain and reimburse himself the costs and expenses which he, the said H. Fournier, shall incur therein.

2.  To pay and satisfy in full the sum of $5178.32 to Placette Caze, a minor, to be paid to her or whosoever may be legally entitled to receive it for her.

3.  To pay and satisfy in full the sum of $800 to the widow Caze.

4.  To pay and satisfy in full the sum of $150 to Henry Labruere.

5.  To pay and satisfy in full several bills and accounts hereafter to be specified by Anthony Laussat to Honoré Fournier, amounting altogether to the sum of $600.

6.  To pay and satisfy in full the sum of $1600 to Sharpnack and Destouet in partnership.

7.  To pay and satisfy in full the sum of $5500 to Andrew Curcier, on condition, however, that before he receives the said payment or any part thereof, he shall pay and deliver to Anthony Laussat all the promissory notes now outstanding in his favour on which Anthony Laussat is endorser, or for which he is responsi-

ble; including particularly one dated the 17th of October 1818, at sixty days, for $2050, in favour of the widow Caze.

8. After making the said preferred payments, that to Andrew Curcier to depend, however, on the terms aforesaid, then to pay all the creditors of Anthony Laussat resident within the United States of America, who shall have released their claims within thirty days from the date hereof, and all his creditors without the United States of America who shall have released their claims within twelve months from the date hereof, the amount of their several debts, in case there be enough hereby assigned for that purpose; but, if not, then to pay the said releasing creditors in average and *pro rata* proportions; the distributions among the said unpreferred creditors to be equal, *pari passu*, without any priority among them.

9. If any surplus shall remain of the said proceeds after all the said payments, to pay the same to the said Anthony Laussat, his executors," &c.

The fund which came to the hands of the present assignee, who succeeded to the trust by appointment of the Court of Common Pleas, was $23,454.92, received between 1836 and 1838, from the commissioners under the French treaty, as indemnity for confiscated merchandise belonging to Mr Laussat. The sum so received was adequate to the payment of all the preferred creditors without interest, and if the claims of Honoré. Fournier and Adrian Lestapies, to meet which $10,000 of the fund had been directed to be retained by the auditor, should not be established, a considerable portion of the interest claimed by the preferred creditors.

The claim for interest, on behalf of the appellants, was made at the hearing, and rejected by the auditor; and his report being excepted to on account of such rejection, the court below confirmed the report.

It appeared by the report of the auditor, that the amount for which Placette Caze was preferred was due to her by Anthony Laussat for her marriage portion, which had been entrusted to him, and that she had other claims against him.

A release as creditors of Anthony Laussat, in consideration of the terms of the assignment of all and all manner of actions, suits, claims, demands, &c., appeared among the documents on the appeal, executed amongst others by And. Curcier, Placette Caze, H. Labruere, and Sharpnack, Destouet & Co., but it was without date.

*Ingraham*, for the appellant, contended that under the terms of the assignment, interest from the date of the assignment should be allowed Placette Caze on the sum for which she was preferred. The debt being then due bore interest, and she was to be paid and satisfied in full, which means principal and interest. The word "sum" meant only the assignor's estimate of what was due to her. He knew it could not be paid then, as the property was first to be

sold and disposed of, and the proceeds collected: and in the fifth preference, a future period is expressly referred to. These preferences were for complete indemnity,. as appears by the seventh preference, under which, if the restricted construction adopted by the court below takes place, Curcier might have to pay more than was returned to him. Equity never deprives a preferred creditor of his legal right to give it to another. He referred to *Fox* v. *Wilcocks*, (1 *Binn.* 194); *Say's Exrs.* v. *Barnes*, (4 *Serg. & Rawle* 116); *Browne* v. *Weir*, (5 *Ib.* 401); *Scott* v. *Morris*, (9 *Ib.* 123); *matter of Murray*, (6 *Paige* 204); *Martin* v. *Martin*, (6 *Watts* 67); *Huston's Appeal*, (9 *Ib.* 473).

*Clay* and *Read*, contra. The effect of the construction contended for is to give Placette Caze upwards of $13,000 out of the funds, instead of the sum of $5178.32, for which she is preferred. But the words of the preference will not under any construction carry interest. In *Scott* v. *Morris*, the word "demands" was used, which is a word of the largest import, embracing everything, actions, entries, accounts, rights, claims, and causes of action. So in *Brown & Agnew's Estate*, words of similar import were used. But here the assignor expresses the exact sum to be paid, notwithstanding he well knew the payment was to be postponed. The natural construction is, that preferences to about $14,000 were to be allowed, and the residue to be distributed amongst the releasing creditors, who might claim their interest under the eighth clause, as well as any other debt due them. Why else did they release? Preferences to creditors have always been construed strictly, and are never extended by equity to the postponement of other honest creditors. Equality is equity. Besides, the fund was a mere *spes recuperandi*, and there is no interest on a dead fund as where money is stopped by attachment or injunction. If on the French claim interest was added, yet the amount recovered was a fixed sum; and what portion was principal and what interest, cannot be ascertained. They cited *Altham's Case*, (8 *Co.* 299); *Fake* v. *Eddy's Exec'r.* (15 *Wend.* 76); *Stevens* v. *Barringer*, (13 *Ib.* 639); *Himely* v. *Rose*, (5 *Cranch* 313); *Martin* v. *Martin*, (6 *Watts* 67).; *Osborn* v. *U. S. Bank*, (9 *Wheat.* 738); *Hoare* v. *Allen*, (2 *Dall.* 102); *Fitzgerald* v. *Caldwell*, (*Ib.* 215).

The opinion of the Court was delivered by

SERGEANT, J.—In the ordinary cases of bankrupt and insolvent estates, a chancellor, exercising his jurisdiction over the assets under provisions made by law, acts upon principles of equity, and may apply them to the distribution of the funds among creditors. He may in a proper case adopt the principle of equality, which is considered as equity in the highest degree; and may take from one class and appropriate to others, so as to effect this object, where he is not opposed by the strict and express provisions of the

Legislature.   But in construing a voluntary assignment, I think, a different rule prevails, and that we are to regard the meaning of the assignor as exhibited by the language of the instrument of assignment.   The assignor possesses the power to prefer such creditors as he pleases, and to such extent as he thinks fit to prescribe; and he who seeks to establish a preference for himself, must bring his claim within the terms used; there is no equity that can enlarge his right beyond that.   Had the assignor in the case before us used any word that could be considered as including interest as well as principal, such as claim, demand, or other equivalent term, then, as interest when by law payable follows the principal and composes a portion of the claim, there would be good reason for including it in the preference.   As in *Scott* v. *Morris*, (9 *Serg. & Rawle* 124), where the trust in the deed of assignment was to pay to the creditors of the first class " the amount of their respective demands in full."   " The word ' demand,' " says C. J. TILGHMAN, " is very comprehensive; it includes everything which the creditor would have been entitled to recover by suit; and there is no doubt but interest might have been recovered as well as principal."

The rule laid down there, and on which that case was decided, is, we think, the correct one in the case of voluntary assignments; namely, that it must depend on the words of the trust contained in the deed of assignment.   Now here no words are used in any of these preferences which will admit of a latitude of construction so as to embrace interest.   That of Placette Caze, for instance, (and in this respect they are all alike) is " to pay and satisfy in full *the sum of* $5178.32 to Placette Caze, a minor, to be paid to her or whosoever may be legally entitled to receive it for her."   The payment is confined to that particular sum for reasons unknown to us, but which we are to presume were sufficiently weighty in the mind of the assignor; but there is no recognition of her debt or claim as such.   It might well be that a debtor owing large sums to certain persons, and estimating a certain amount of assets, should prefer each of them for a portion of their debts, allowing them for the residue of their debt to take their chance amongst the mass of his creditors by coming in and releasing their claims; and such provision exists here for all other claims or debts beyond the sums mentioned, embracing, I conceive, as well any interest coming to these preferred creditors, as any surplus beyond the sums mentioned, as well as the debts of other creditors not preferred, by virtue of the eighth clause of the assignment.   And this is the more probable in the present case, because the recent assets have come from a source probably little calculated on by the assignor as likely to be ever realized; and therefore not looked at in his arrangement of preferences, or, if contemplated at all, left open to time and chance.   No argument, in construing this assignment, can, we think, be drawn from the

character of the fund ultimately realized, even supposing we could ascertain what was principal and what interest in the money recovered under the treaty; since the question must depend on the words of the assignment, and the claimant must bring himself within them to establish his preference, whether the fund that yielded the assets ran on interest or not. For these reasons, we think the decree of the court below must be affirmed.

Decree affirmed.