## Gideon L. Spencer & others *v.* John P. Pierce & others.

A mortgage in trust, executed by a calico printer, amongst other things, provided, that the trustee should pay "all sums now due or which may become due from said Patterson (the mortgagor) to himself, the said Pierce, and to all other persons now or heretofore employed, or to be employed by me, for the labor or other service of all such persons in operating said print works, or in doing the teaming to and from said print works, and in any business of or connected with said print works, whether there or elsewhere: but not including any persons who may have been employed in putting in machinery, or fitting up the same, in said print works, or in the management of said print works, as manager or overseer thereof; and not including a note given by me to Samuel McElroy, until he discharges me from the indorsement by me of a note for him,"—*Held*, to include the amount due to one for services performed under a sealed contract, by which the mortgagor had engaged him, in consideration of a stipulated per centage on the gross amount of sales of all prints made at the works, to aid in getting up the styles of his prints, and to superintend that branch of his business in Providence and New York,—to assist him in the purchase of cloths, drugs, and coal,—to make needful arrangements with his selling agents,—to superintend the sales and the rendition of the accounts of sales of prints,—to aid him in the procuring of job work,—and, generally, to advise him in his business, except professionally.

*Held*, also, to include interest on all sums due, from the time they become due by agreement, for service and labor protected by the mortgage, although such interest be not expressly stipulated for, but accrues by way of damages for default of payment; the law, in this country, annexing interest as an invariable incident in all cases of default to pay the principal sum, when the debtor knows *what* the principal sum is, and *when* he is to pay it: and *Held*, *not* to include fees due to attorneys and counsellors-at-law for defending suits brought against the mortgagor, in which his goods in the hands of his agents had been attached, or for giving him advice in matters of law relating to his business.

Where one was made party defendant to a bill to redeem such a mortgage, as having a claim for services included in it, which, by the terms of his contract, was to be paid to his son for the benefit of his wife, and appeared and answered the bill, and represented the claim before the master appointed under it, and the master reported the amount of the claim, and that the same should be paid to the son, for the mother, the court refused to overrule the allowance of the master, or to delay the cause, at the instance of the plaintiffs, who claimed as creditors of the mortgagor under a general assignment executed by him subsequently to the mortgage, because the son and wife were not parties to the bill.

EXCEPTIONS TO A MASTER'S REPORT. The bill was a bill to redeem, filed by the plaintiffs as assignees of Edward P. Patterson, a calico printer, under a general assignment made by him for the benefit of his creditors, against John B. Pierce, as a mortgagee in trust, for the security of certain creditors, made also parties defendant to the bill, under a mortgage of personal property, principally consisting of printing machinery, apparatus, and tools, executed several months prior to the assignment. Upon the coming in of the answers admitting the right of the plaintiffs to redeem, the case was sent to a master, to take an account of the amount due upon the mortgage. As all the questions made before the master, and now brought by exceptions before the court, turn upon the effect to be given to the *second clause* descriptive of the trusts of the mortgage, the points decided will be sufficiently intelligible if *that* be here set forth; relying, for other facts, upon the statement of the same, made from the report of the master, in the opinion of the court.

The mortgage, which contemplated the carrying on of his business by the mortgagor, conveyed the property embraced in it to Pierce, in trust, to sell the same, and directed him to appropriate the proceeds of sale in manner following :—

" *First.* That he pay the expenses and charges of executing this trust, and retain to himself a reasonable compensation for his time, and services actually rendered therein.

" *Second.* That he pay all sums now due or which may become due from the said Patterson to himself the said Pierce, and to all other persons now or heretofore employed, or hereafter to be employed by me, for the labor or other services of all such persons in operating said print works, or in doing the teaming to and from said print works, and in any business of

or connected with said print works, whether there or elsewhere; but not including any persons who may have been employed in putting in machinery or fitting up the same in said print works, or in the management of said print works, as manager or overseer thereof; and not including a note given by me to Samuel McElroy, until he discharges me from the indorsement by me of a note for him."

The condition of the mortgage provided, that the same should become void upon payment by Patterson, or any one on his behalf, of the debts secured by it, at any time within six months from the date of the mortgage.

The exceptions were shortly argued by *C. B. Farnsworth,* on the part of the plaintiffs, and by *B. Cozzens,* on the part of the respondents; exceptions having been filed, on both sides, to the master's report.

AMES, C. J.  The *first* class of exceptions, to which we direct our attention, consists of those made, on both sides, to the allowances and disallowances by the master of the items of the claim of Benjamin Cozzens, the largest claim preferred against the mortgaged estate.  This claim, in great part, arises out of a sealed contract, entered into between Cozzens and Patterson on the 4th day of February, 1856, determinable by either party upon three months notice, by which Cozzens covenanted to aid Patterson in getting up the styles of prints to be printed at the works of the latter, superintending that branch of the business in Providence and New York; to assist him in the purchase of cloths, drugs, and coals; to make needful arrangements with Patterson's selling agents, and to superintend the sales and the rendition of the accounts of sales of prints by them; to aid in the procuring of job work, and generally to advise him in his business, except *professionally.*  In compensation for these services, Patterson stipulated to pay Cozzens a commission of one and three quarters per cent. on the cost price of the gray cloths of all job work printed at Patterson's works, and three quarters of one per cent. on the gross sales of all other goods printed at said works, with the privilege of obtaining from the commission merchants of Patterson an allowance sufficient to make the latter allowance up to one per cent., so that no arrangements were

made by Cozzens with any commission house of Patterson, for the purpose of procuring this allowance, detrimental to the interests of the latter. The contract stipulated, that Cozzens's commissions on the job work were to be paid as the lots were finished, and upon the other goods printed at the works, from time to time, as the sales were rendered, to the order of Samuel D. Cozzens of New York, trustee, and for the sole use and benefit of Mrs. Mary S. Cozzens, wife of the said Benjamin Cozzens.

The main item of the claim made by Mr. Cozzens under the second clause of the trusts created by the mortgage, is the sum of $1,312.83 for his commissions of three quarters of one per cent. on the gross sales of goods printed at the Manchester print works, stipulated to be paid to him by Patterson, by the sealed contract aforesaid, for his services in getting up the styles of prints, &c.

According to the master's report, no objection to this portion of Mr. Cozzens's claim was made before him, except that, because Mr. Cozzens had, it was said, violated the contract, under which he claimed, in some respects, he had thereby lost all title to claim under it. Inasmuch as the failure of service was not claimed to be total, and there was no clause of forfeiture in the contract, the master very properly overruled this objection, except so far as it might be a ground for set-off, which does not appear to have been insisted on. The master allows this item in full, as one fairly within the scope of the contract.

Another item of Mr. Cozzens's claim is the sum of $40.42, for commissions stipulated by the contract on the cost of gray cloths printed by the job at said works, which was also allowed by the master.

Now to the allowance of these two items in Cozzens's claim, three exceptions are filed by the plaintiffs; the two first going to both items, and the other to the last item only. These are,

" 1st. That all the items of claim allowed to said Cozzens arise under a written contract, referred to in said report, and on the files ; and that no claims under said contract are secured by the mortgage named in the plaintiff's bill.

" 2d. That no sum is due to said Benjamin Cozzens under said agreement.

" 3d. That on a true construction of said agreement, the third item of said Cozzens's claim (being the above item of $40.42 for commissions on job work) allowed by said master, was erroneously allowed."

With regard to the first of these exceptions, that the claim for service arises under a *written* contract, we do not see the force of it, so that the character of the service be such as to bring it within the scope of the mortgage. The getting up the styles of prints to be printed at the works was certainly a service " in the business of or connected with the print works ; " being the most important to success in that business of all service that could be performed; and the mortgage expressly secures such service, whether performed " there," that is, at the print works, or " elsewhere." The same may be said in general, although not with so much force, of the other services stipulated to be rendered by Mr. Cozzens,—all directly connected with the business of the works, and usually performed by the owner of them; the contract being evidently made, to secure to Patterson, in carrying on his business as a calico printer, the aid of the well known experience and tact of Mr. Cozzens in that line.

The *second* of these exceptions, that no sum whatever is due to Mr. Cozzens under this agreement, refers to defect of proof of service, for which no ground is laid in the master's report, or to the fact, that by the contract, whatever was due to Mr. Cozzens for his services, was to be paid, not to him, but to Samuel D. Cozzens, as trustee for Mrs. Mary S. Cozzens. As *the sums due*, or to become due for labor or services, are secured by the mortgage, and not any particular individuals by name, we cannot see the force of this last objection, as a matter of substance. The fact, that by express stipulation, Patterson agreed to pay what should be due to Mr. Cozzens for his services to the use of one whom Mr. Cozzens chose should enjoy the fruits of his labors, in no manner affects the question, whether the claim for these services is embraced within the mortgage, but only the question, of the person to whom the claim is to be allowed and paid. As a matter of form, the master has, we think, properly overruled the objection; inas-

much as it is not necessary that the *cestuis* should be made parties to the bill, and this claim has been properly represented before him, and is allowed by him, payable to Samuel D. Cozzens, as trustee for Mary S. Cozzens.

The *third, and last, exception* of the plaintiffs, appears, by coupling the terms of the exception with the clause of the report relating to it, to be, that Cozzens could not claim his commission on job work, when the goods printed by the job belonged to him. This is clearly groundless; since the contract gives him, in terms, his commission on " all job work printed at the works during the continuance of the contract," as a mode of compensating him for his various services in the business, without reference to the ownership of the goods printed by the job, or to his connection with the procuring of the work to be done.

The exceptions of the plaintiffs to the master's report, all confined to Mr. Cozzens's claim, are therefore overruled.

We next come to the exceptions of Mr. Cozzens to the master's report, filed, on the ground, that certain items of his claim were wrongfully disallowed. Reserving the first and second exceptions filed by him, embracing his claim for interest and for professional services, for consideration with claims of a similar character preferred by others and disallowed by the master, we come to the *third* of these exceptions, to wit, to the disallowance of Mr. Cozzens's claim of one half of one per cent. on Messrs. Miller, Mayhew & Co.'s sales of Patterson's prints, amounting to $105.79. The ground of this claim is, that Patterson, by sending goods to the firm of Miller, Mayhew & Co., without the knowledge of Cozzens, contrary to a verbal understanding between them, prevented Cozzens from obtaining an allowance to that amount under some arrangement with that house, contemplated by the contract between Patterson and himself, which otherwise, perhaps, he might have made. The disallowance by the master of this item is entirely satisfactory to us; the claim proceeding upon the ground that Mr. Cozzens can convert into *a right*, that which the written contract, our proper guide, accords as *a privilege* only *when exercised*, which it was not here, and exercised, too, in such

manner as not to be detrimental to the interests of Patterson, as to which nothing is shown to us. Had this been otherwise, the claim is double what is permitted by the contract, being for one half, instead of one quarter, of one per cent.

The *fourth*, of Mr. Cozzens's exceptions, is, to the disallowance by the master, of his claim for services, performed after the print works had stopped, and after Patterson had surrendered possession of the property included in this mortgage to the mortgagee, in negotiating for Patterson, with Smith and Schroeder, for such further indulgence as to claims due by him to them as would enable him to resume his business at the works.

This claim, amounting, as reported, to $140.40, was properly disallowed by the master, the services being disconnected with *the operation* or *business* of the print works, and so not within the scope of the mortgage; or, if connected with the business of the print works, are compensated by the commissions stipulated and allowed; Cozzens being bound by his contract "to advise Patterson generally in his affairs," so that the advice was not in its nature professional. The negotiations charged for in this item are those usually entrusted to an attorney or solicitor; and, so far as undertaken and carried on in that character, will be considered hereafter.

The *fifth*, and *last*, of Mr. Cozzens's exceptions, is, to the disallowance by the master of the item in his claim, of $13.72, for going to Boston and negotiating with Read & Chadwick an extension of Joseph Smith's paper, at the request of Patterson, whose arrangements with Smith would be facilitated by such an extension. The proof, as reported by the master, leaves it in doubt whether this service was performed at the request of Patterson at all, and certainly does not disclose how the service, if performed at his request, was connected with the operation or business of the print works.

For these reasons, the *third, fourth,* and *fifth* exceptions, filed by Mr. Cozzens to the report of the master, are overruled.

The *second class* of exceptions to the master's report, are, to the disallowance by him of the claims of Harlow, Farnsworth, Samuel D. Cozzens, and Benjamin Cozzens, for professional services; concurring with the master as we do, that within

claims of this sort, falls the first item of Mr. Benjamin Cozzens's claim, amounting to $34.55, which forms the subject of his first exception.

It appears that the services, the claims for which are disallowed, were performed before the execution of the mortgage, at the request of Patterson, and were principally spent in defending his goods in the hands of his consignees in New York and Boston, against attachment by his creditors.

It is true, as reported by the master, that such services cannot come within the description of " labor or other services" " in operating the print works ; " but it is urged that they do fall, as in some general sense they undoubtedly do, within the more general description of the clause of the mortgage in question, of services " in any business of or connected with the print works, there or elsewhere." The question still remains however, was it the intent of the mortgagor, under this clause, to secure, by a pledge of his property, the claims of all the counsel whom he had retained in the prosecution or defence of suits growing out of the business carried on by him at his print works ? The claims of this sort, here presented, chance to be of no great amount; but they might have been very large; and, large or small, are they embraced by the language employed in this clause of the mortgage ? The purpose of the mortgage was, undoubtedly, by securing the labor and services necessary to the operation of the print works, to enable the mortgagor, notwithstanding his embarrassments, to carry them on. Professional services surely do not fall within the scope of this consideration. By what the mortgagor enumerates, too, to wit, labor and services *in operating* the print works—*teaming* to and from them— we have some guide to his meaning in the more general language, subsequently used by him, when he speaks of services " in any business of or connected with the print works, there or elsewhere." The locality in which the service is performed is indeed of no consequence, but the character of it, as the business of or connected with the print *works*, as distinguished from the business of himself as a calico printer, seems to us signified by the kinds of service which he enumerates before. In short, we do not see our way clear to the allowance of these claims as

within the scope of the mortgage, and in such case, must concur with the master in his disallowance of them.

The *third*, and *last* general class of exceptions is founded upon the master's disallowance of interest upon all claims allowed by him, put by him upon the ground, that such interest would be in the nature of damages. We do not think that this consideration, in application to the allowance of interest on claims embraced by such an instrument as this, is at all decisive. The question rather is, as put by that eminent judge, the late Mr. Chief Justice Tilghman,— what was the intent of the maker of the instrument in this respect? *Scott* v. *Warren*, 9 S. & R. 123; *Schultz's Appeal*, 11 Ib. 182; and see *Murphy's Appeal*, 6 Watts & Serg. 223. It is true that the English common-law rule, except where interest is made the subject of express stipulation, or implied from the usage of trade, as in case of commercial instruments, such as bills of exchange or other commercial contracts, or is implied from the course of dealing between the parties, allows no interest after day of payment, for the default; and, in consequence, the matter has been there regulated by statute, as by 3 & 4 Wm. 4, ch. 42, § 28, in relation to contracts, and by statute 1 & 2 Vict. ch. 110, § 17, in relation to judgments. The well-settled American rule, on the other hand, is much more liberal in this respect; and gives interest, though not stipulated for, as an invariable legal incident of the principal debt, from the day of default, whenever the debtor knows precisely *what* he is to pay, and *when* he is to pay it. *People* v. *New York*, 5 Cowen, 331, 334; 1 Am. Lead. Cases, (Hare & Wallace's notes,) 497 to 523, where see the cases collected and well collated. Now we think, that it is in the light of this well-settled rule, that we are to construe the language, used by this mortgagor, in the clause in question. He specifies no particular sum or sums as due, or to be embraced within the protection of the mortgage, but directs his trustee, to " pay *all* sums *now due* or *which may become due*" from him to the trustee, or to other persons, for labor, or other services, &c. We are of the opinion, that in cases in which the law annexes interest as an invariable incident of a debt due for labor or service, the payment of such interest, as

inseparable from the debt, is fairly within the scope of this direction. We, therefore, instruct the master, to allow interest at six per cent. per annum, from the day of default in payment, on all sums allowed by him for labor or service, the amount of which is certain, or can be made certain by computation, under the contract of the parties, and in which, the time of payment is fixed, by the terms of the contract, or by the course of dealing between the parties. As the facts, relating to each claim on which interest has been disallowed, are not reported to us with such exactitude as to enable us to deal with the allowance of interest in each particular case, the exceptions, made to the disallowance of interest by the master, are sustained, and the report is recommitted to him, with instructions to allow interest, according to the rule above laid down.