## Estate of the Bank of Pennsylvania.

1. No one is held to have waived a right unless it appear that he knew his rights and intended a waiver.

2. After demand and refusal of payment of a bank note, interest is incident to the contract between the bank and note-holder as in case of any other ascertained demand.

3. The notes of the insolvent Bank of Pennsylvania are entitled to interest from the time of demand out of the assets in preference to depositors, although under prior distributions the principal of the notes had been paid in full.

4. Interest under the Acts of Assembly is as much a part of the note-holders' claim as the note itself.

February 4th 1869. Before THOMPSON, C. J., AGNEW, SHARSWOOD and WILLIAMS, JJ. READ, J., at Nisi Prius.

Appeal from the decree of the Court of Common Pleas of

[Estate of the Bank of Pennsylvania.]

*Philadelphia*, in the distribution of the assigned estate of the Bank of Pennsylvania: No. 166, to July Term 1868.

The decree in the court below was the confirmation of the report of the auditor, George W. Biddle, Esq., on the sixth account of William C. Patterson, William L. Savage and John D. Taylor, assignees for the benefit of creditors of the Bank of Pennsylvania. The assignment was dated February 17th 1858.

The 9th section of the Act of April 26th 1844, Pamph. L. 420, directs that the assignees of any bank under an assignment for the benefit of creditors shall, in distributing the assets in their hands, pay "1st. Note-holders; 2d. Depositors; 3d. All other creditors except stockholders, who shall be last paid." This is the same order of distribution directed by the 39th section of the Act of April 16th 1850, Pamph. L. 490, Purd. 103, pl. 107. Under former distributions of the assets of the Bank of Pennsylvania the note-holders of the bank had been paid the *principal* of their claims in full.

The claimants on the fund now for distribution were the note-holders, who demanded interest on their notes, and depositors, who resisted the demand.

There was also an incidental question raised, viz.: whether a bank holding a clearing-house "due-bill" was a depositor within the meaning of the act.

The several questions raised and the circumstances of the case will be best understood from the report of the auditor. After some preliminary statements, showing the amount of assets, claims, &c., the auditor says:—

"We are then led to inquire how the remaining assets of the bank shall be distributed. Two principal claims are made upon this fund. The note-holders claim interest upon their notes, while the depositors assert that this demand is unfounded in law, and that they, being the creditors next preferred in the order of distribution, are entitled to take *pro ratâ* among them whatever surplus may be left after the discharge in full of the principal of such notes as may be presented for payment.

"This raises an interesting question for decision; but, before considering it, the auditor desires to pass upon a subject now closely connected with it.

"Who are the depositors entitled to be paid second out of the assets of the bank? The banks holding the exchange or clearing due-bills, assert that they are entitled to be regarded as depositors in this respect, and claim to be treated as such in any distribution. Some testimony was given on this subject. From this testimony it appears that these due-bills are intended to prevent the risk of carrying money or certified checks from bank to bank; that they are valueless, except in the hands of the bank to whom issued; that sometimes they are issued to individuals; that the balance of

[Estate of the Bank of Pennsylvania.]

the account to which they are charged is added to the aggregate due from banks, and is liable, under the United States laws, to the same tax that deposits are; and that they cannot be demanded as certified checks or certificates of deposit can be, at the pleasure of the holder, but that they must be presented within a fixed time. The amounts sent to the clearing-house are made up of these due-bills, checks and bank-notes, all payable at or by the bank to which sent, and are all regarded as immediate liabilities of the debtor bank.

"From this description, it was contended that they were substantially deposits, or certificates of deposit, and that the banks holding them were depositors. But to this view the auditor cannot subscribe. That they are convenient tokens by which bank-notes, checks and other indebtedness of one bank to another are represented, is clear; but that they are what is meant by the legislature, when it speaks of depositors in the order in which the creditors of an insolvent bank shall be paid, is by no means made out. It might, with almost equal force, be contended that they are *bank-notes*, and entitled to the first preference; for they undoubtedly do represent, in the same sense, the notes of the debtor bank as well as the checks drawn upon it. The auditor has, in his report upon the assignee's second account, briefly stated his reasons against regarding them as notes. In his view they are not deposits in the sense used by the legislature, which term should be confined to money placed with a bank to be drawn upon or used by the depositor, either at pleasure or under stipulated terms. These due-bills merely represent an indebtedness, and no deposit has ever, in point of fact, been made with the debtor bank by the bank to whom they are issued.

"It is difficult to make this plainer by circumlocution or illustration; but to the auditor's mind it seems clear, and he therefore reports that the holders of such due-bills or liabilities are not depositors within the order of payment fixed by the legislature.

"It remains, then, to examine the question whether the note-holders can claim more than the principal of the notes held by them, which, as has been seen by former reports, has been paid in dividends struck by the assignees, from time to time, out of the assets of the bank, the last dividend, of nearly 40 per cent., being paid in the latter part of the year 1865.

"It may be well here to restate what has been said in former reports, bearing directly upon this question. The Bank of Pennsylvania suspended payment on the 25th September 1857, and from that day until the 17th February 1858, when the assignment was made to the present accountants, it may be said to have been in an insolvent condition. After its suspension, and before the assignment, demand was made upon it for the payment of its notes,

by holders of notes, to a very large amount (over $78,000), the evidence of which was placed, as required by law, upon the notes themselves; and after the assignment, all the notes upon which dividends have been paid, were presented by the holders, from time to time, at the office of the assignees, and registered by them in a book kept for this purpose. When the last dividend was struck, and directed to be paid, the auditor abstained from going into any consideration of the question of the right to the remaining surplus; and this dividend may be considered as having been received with this understanding, and without the waiver of any rights by the note-holders who accepted it.

" Upon this state of facts, it is contended by the depositors, that the notes of which the principal has been paid are discharged in full, and that no interest is claimable thereon because no interest is due.          *          *          *          *          *          *          *

" On the other side it was contended, that in Pennsylvania, every debt bore interest until it was fully discharged, and that payment of principal alone, after a lapse of several years, was by no means a discharge of the debtor's obligation.          *          *          *          *

" After a careful study of the law upon the subject, and considerable reflection, the auditor is confirmed in the view which impressed him as the true one upon the conclusion of the arguments of counsel. The note-holders are entitled to receive interest on the notes held by them, and the surplus fund should be so appropriated. A fair consideration of the case leads directly to this conclusion. A jealous desire to protect the note-holder has marked our state legislation upon the subject of banks from a very early day, and wisely. Where bank-notes are issued by law, they form the currency of the country, and every one must of necessity hold them. No one can exempt himself from this necessity, even when they are nominally redeemable in specie. All note-holders have therefore a right to expect protection when calamity overtakes the institution by which they are issued. And the legislature has not been unmindful of this. Thus in the Act of 22d March 1817, relative to suits brought by or against corporations, Pamph. L. 128, while it is provided that no suit shall be sustained on any bank-note, unless demand shall have been first made for payment at the banking-house, office or treasury, in case of non-payment, interest shall be recoverable on the same from the time of making such demand. So, by the Act of 25th March 1824, to recharter certain banks (Pamph. L. 59), in art. 18 of sect. 3, it is provided that on the neglect or refusal of any of the rechartered banks to pay on demand, in gold or silver, any note issued by it, the holder of such note shall be entitled to receive and recover 6 per cent. interest thereon until the same shall be fully paid and satisfied, from the time of such demand. So by the Act of 12th March 1842, to provide for the resumption of

specie payments by the banks (Pamph. L. 68), the banks are required to redeem their notes in gold and silver coin upon demand being made, and a refusal or failure so to do, is to be taken to be an absolute forfeiture of their charters. Again, by the Act of 16th April 1850, regulating banks (Pamph. L. 477), a failure to redeem the circulation in specie, upon demand being made, is held to be an absolute forfeiture of the charter, and the holders of notes so neglected to be paid on demand, are entitled to recover interest thereon, until the same shall be fully paid, at the rate of 12 per cent. per annum from the time of such demand.

"Why, then, is not interest payable in the present case? It is a substantive part of the debt, and the legislature has evinced extraordinary anxiety to protect, in this respect, the holders of such obligations. The making of an assignment by an insolvent bank cannot, in the auditor's opinion, have the effect that is attributed to it by the counsel of the depositors. · In the case of judicial sales, it is true, where enough has been realized to pay the debt and interest to the time of sale, interest ceases for the reason that, as the debtor, after the law has forcibly taken from him his property to pay his debts, cannot control the time and mode of payment, he is absolved from the time the sale is made, and the proceeds of sale stand in place of the property. But even, here the debtor is chargeable with interest where the delay is occasioned by himself: Strohecker *v.* Bank, 6 Watts 96. The reasoning used in regard to judicial sales has, then, no applicability to assignments like the present. And the analogy sought to be drawn from proceedings in bankruptcy also fails, because *there*, as Tilghman, C. J., says, in a case about to be immediately referred to, the object is to produce as much as possible equality among all the creditors. After a man's death his debts draw interest, and this as between different classes of creditors. In the case of Shultz, Administrator of Weaver, 11 S. & R. 188, decided by the Supreme Court in 1824, it is held that where the estate of a decedent is not sufficient to pay both debts by *specialty* and by *simple contract*, creditors by specialty are entitled to INTEREST on their debts to the time when the assets are apportioned. It was contended, in this case, for the simple-contract creditors that all interest stopped either at the death of the decedent or at the date of the grant of letters of administration. But Tilghman, C. J., said that the intention of the legislature was to give a preference, and that there was no intention *to make a deduction from one class of debts to let in those of another class;* and that the debt on a bond meant the sum recoverable by suit, *i. e., principal and interest to time of payment.* And he discarded the supposed analogy of the bankrupt cases. This case very strongly resembles the present one in its important features, and, so far as I

[Estate of the Bank of Pennsylvania.]

know, has never been doubted or denied. The case of the county warrants, to which resemblance is sought to be found (Allison *v.* Juniata County, 14 Wright 351), may be dismissed with the remark made by the judge who decided the cause, that such warrants are *not* bills, notes or checks.

"Demand of payment of these notes was made in several ways by the holders. A very large number of them were demanded before the assignment was made, and after the assignment they were presented and claimed upon at the only place—the office of the assignees—at which any demand could be made. Even if the assignment for the benefit of creditors, a notorious act of insolvency and public evidence of inability to pay its notes by the bank, did not dispense with the necessity of demand, as it may well be contended it did (North Pennsylvania Railroad Co. *v.* Adams, 4 P. F. Smith 94, as to the rightful claim of interest on coupons where the company issuing them was notoriously unable to pay them); yet demand was made by the holders now claiming interest. And the case of Bank Commissioners *v.* Lafayette Bank, 4 Edw. Ch. Rep. 287, cited by the counsel for the depositors, seems to be rather an authority in favor of the allowance of interest in the present case. The Act of 16th April 1850 does not, it is true, apply to the Bank of Pennsylvania, because it was not acting under its renewed charter when it failed (Auditor's First Report, page 23); but the Act of 22d March 1817, before quoted, does apply, and it makes interest recoverable, in case of nonpayment, from the time of making a demand at the banking-house, office or treasury of the recusant bank. The case seems directly within the purview of this act, and may safely be rested upon it. It would be certainly wide of the legislative intent to hold that a payment by piecemeal of the notes of an insolvent bank throughout a period covering eight years was a complete discharge of the indebtedness originating under them, and a compliance with the preference in favor of note-holders, when there was a surplus on hand derived from the assets of the bank. And it may be remarked that the preference in the act is given to the *note-holders*, which is certainly a word of larger import than *notes*.

"Nor is there any real hardship from this construction upon the depositors. Had the assets been all collected and divided immediately upon the assignment being made, it is quite likely they would have fallen much short of paying even the principal of the notes. The care and industry bestowed upon their collection has enabled the assignees to do better. But the product is the note-holders' until their debt is paid, principal and interest. The surplus fund in the accountants' hands is therefore awarded to the note-holders, in discharge of the interest due them; assuming the starting-point for its calculation to be either the date of demand

made before the assignment, or the date of the assignment, namely, February 17th 1858, or what is less favorable to them, the 1st November 1858, a short time after the beginning of the audit upon the first account, when the notes were regularly registered, as presented and proved. The interest from either date will much more than consume the present balance, and any amount that is likely to be realized hereafter from the remaining assets. Should any unforeseen contingency make it at all necessary, the calculation can be gone into more minutely; but it is quite unnecessary so far as the present account is concerned."

Exceptions were filed to the auditor's report; it was confirmed by the Court of Common Pleas. The Farmers' and Mechanics' National Bank and the administratrix of William Griffen, deceased, depositors, appealed. They assigned for error that the decree allowed interest to the note-holders and did not distribute the fund amongst the depositors.

*R. L. Ashhurst* and *E. S. Miller*, for Farmers & Mechanics' Bank, appellants.—It is of the essence of bank-notes, that they do not bear interest. When money is payable on demand, or without stipulation of time, interest is given as damages for the unlawful withholding of it, and not otherwise: Schmidt *v.* Limehouse, 2 Bailey 276; Nelson *v.* Contrand, 6 Dana 7; Abbott *v.* Wilmot, 22 Vermont 437; Hubbard *v.* Charlestown R. R., 11 Metc. 124; Bander *v.* Bander, 7 Barbour S. C. 560; Jacobs *v.* Adams, 1 Dallas 52. When interest is given by way of damages it is separable from the principal and not necessarily entitled to the same preference: Dickenson *v.* Harrison, 4 Price 282; Bantleon *v.* Smith, 2 Binn. 153; Ter Hoven *v.* Kerns, 2 Barr 96; Dougherty's Estate, 9 W. & S. 189. Where some creditors are preferred it will not be implied as against others that the preference extends to interest after the assignment: Man's Appeal, 1 Am. Law Reg. 631; Commissioners *v.* Lafayette Bank, 4 Edwards Ch. 287; Murphy's Appeal, 6 W. & S. 223; Miller's Appeal, 11 Casey 482; Hacker *v.* Perkins, 5 Wharton 95; Ex parte Koch, 1 Ves. & B. 342; Bromley *v.* Goodere, 1 Atk. 75. Interest cannot be claimed when money is in the hands of the law: Jackson *v.* Lloyd, 8 Wright 83; Allison *v.* Juniata Co., 14 Id. 351; Dyer *v.* Covington Township, 7 Harris 200; Kelsey *v.* Murphy, 6 Casey 340; Ramsey's Appeal, 4 Watts 73; Fitch *v.* Fitch, Kirby 38; Lamb *v.* Lamb, 11 Pickering 371. The receipt of the principal waives interest: Compraet *v.* Ewing, 8 Blackford 328; Howe *v.* Bradley, 1 App. 31; Tillotson *v.* Preston, 3 Johnson 229; Jacob *v.* Emmet, 10 Paige 142.

*G. D. Budd* (with whom was *C. Guillou*), for Griffin's administratrix, appellant.

[Estate of the Bank of Pennsylvania.]

*S. Dickson* (with whom was *J. C. Bullitt*), for appellees.—Several Acts of Assembly make interest payable on bank-notes after demand: 22d of March 1817, § 1, 6 Sm. L. 438, Purd. (1830), 166, pl. 6: March 25th 1824, § 3, Art. 18, Pamph. L. 68, Purd. (1830), 109; April 16th 1850, § 25, Pamph. L. 488, Purd. (1861), 100, pl. 90. The Acts of Assembly allowing interest and also a preference to note-holders, the preference applies to interest: Shultz's Appeal, 11 S. & R. 182; Champneys *v.* Lyle, 1 Binney 327; Caldwell *v.* Cattawissa Railroad, Leg. Intel. 1868, p. 332.

The opinion of the court was delivered, February 25th 1869, by Thompson, C. J.—It is evident, if the learned auditor be accurate in the conclusions arrived at in his report, that the holders of registered notes of the Bank of Pennsylvania are entitled to interest thereon, notwithstanding the principal has been extinguished by sundry dividends made by the assignees, there is no other practical question for decision, as that will absorb the entire balance of the assets. We will, therefore, turn our attention to this point in the first place, regarding as we do the notes presented and registered by the assignees as precisely on the footing of those presented and endorsed by the bank, and to this we need not again recur.

This controversy arises out of an assignment, in which the law creates preferences. By the Act of 26th of April 1844, it is provided in cases of assignment for the benefit of creditors by banks, that the assignees shall pay the debts and liabilities of insolvent and assigning banks in the following order: "First, note-holders; second, depositors; third, all other creditors, except stockholders, who shall be paid last." That order has been strictly followed by the assignees so far as the principal of the notes in circulation of the Bank of Pennsylvania is concerned, their assets reaching no farther at the period of the last dividend; the question is now whether the assets on hand are distributable to the interest accrued on said notes after demand and registration, or to the next class of creditors—the depositors.

It seems to have been contended before the auditor, that the note-holders, having received the principal of their demands heretofore, they must be regarded as having waived any rights they might have had to interest in favor of the next class. This position was overruled by the learned auditor, and not very distinctly renewed here, although it was remarked on by the learned counsel for the exceptants in argument. It will be remembered that the note-holders were paid, from time to time, by a *pro ratâ* distribution among them, of the money in hand. They could not know at any time whether the assets of the bank would hold out to pay their entire claims, or only a portion of them, until new accounts were exhibited by the assignees. Hence their acceptance of

[Estate of the Bank of Pennsylvania.]

partial payments did not waive what remained unpaid. This will not be pretended; there is no difference in principle between that and the acceptance of the principal in full, leaving the interest, the trustees not being in funds to pay it. That was the case here. If there was a surplus at the last distribution, it was very small, and it was not thought best to be applied to a partial distribution to interest, even if the trustees had thought it allowable. But we need not enlarge on this point. No one is held to have waived a right, unless it appears that he knew his rights and intended a waiver of them.

In support of the position that interest is not to be allowed to the note-holders as against the subsequent classes of creditors, the exceptants contended that it cannot be regarded as a substantive and inseparable incident of the contract between the bank and its note-holders, that on its failure to redeem them after demand and endorsement, interest should thenceforth follow.

I can hardly realize the necessity of reasoning, to show that it is an incident of the debt immediately falling due on demand made, as in the case of any other ascertained demand overdue when it is settled by positive law.

The interest claimed here, either on the principles of contract or by express statute, we think allowable. The Act of 22d March 1817, under which, in the opinion of the auditor, this bank by statute is liable to the rate of interest claimed by the note-holders, provides that in case of non-payment after demand by a note-holder, "interest shall be recoverable on the same from the time of making such demand." And by article 18, of section 3 of the Act of 25th March 1824, for the recharter of certain banks therein named, it is provided that in case of the non-payment of its notes by any of the banks so rechartered, the note or bill holders thereof should, after demand, &c., be entitled to recover interest "until the same (i. e. the notes) be fully paid and satisfied, at the rate of 6 per cent. per annum from the time of such demand." Pamph. L. 1824, p. 68. This last provision is incorporated almost *verbatim* into the 25th section of the Act of 16th April, 1850, excepting that the rate of interest to be recovered is 12 per cent.

By positive law, therefore, is the recovery of interest allowed in this Commonwealth, in case of the failure of banks to redeem their notes after demand. It is recoverable, says the Act of 1817, and is thus made as much a part of the note-holders' claim as are the notes themselves. No distinction is made between the claim for principal and interest. They constitute therefore a unit, and must come within the preference, the one as well as the other.

It is true the bank-notes of banks of this state do not express a promise to pay interest, presently or contingently; yet it will be seen that by the very law of their creation, interest was to become an

incident in a certain contingency. This was one of the terms on which they were issued, and is to be presumed to have been the terms on which they were taken or held. There is no perceptible difference between the law of a contract, whether it results from and is declared by an act of the legislature, or is the result of the agreement of the parties. In either case, it becomes the law of the individual case. There is a close resemblance, if not an absolute identity, between the claim of interest, whether it arises on a contingency expressed, or at a particular point of time. In both cases it is a question of time. We know that the provision for interest to commence in the future, is a common occurrence, and is not disputable. Why should it be when it is made to arise on the happening of an event, without being either a penalty or damages? This has not been shown in any case of demand claims; in other words, in debts payable on demand, nor can it be, either by the name of interest, as the act expresses it. Whether by positive law or by the contract implied from the transaction between the receiver of the notes of a bank and the bank, we regard the 6 per cent. allowed as interest, as a substantive part of the contract. Murphy's Appeal, 6 W. & S. 223, sustains these views, and Miller's Appeal, 11 Casey 481, both cited by the exceptants, in no way militates against them.

The exceptants further contend that interest is not allowable, because the assets of the debtor bank have been, since the assignment, in the possession of the law, and in process of distribution, like money arising on sales on execution, or money in the hands of a garnishee, or of an assignee in bankruptcy.

The learned auditor was of opinion that these instances were not analogies to govern in this kind of case, and cited Schultz's Appeal, 11 S. & R. 183, as more to the point. We fully agree with him that it is so. That was a case of the distribution in the Orphans' Court, of the assets of an insolvent estate, under the statutory preferences of the Act of 1794. Under that act, debts by bond or specialty had a preference over simple-contract debts, in the order of administration. In Schultz's Appeal, the latter class contended, as here, that interest was not payable to the specialty creditors up to the time of the distribution of the assets; the court held that they were. The rule in bankruptcy was invoked there as here. In regard to the claim of the simple-contract creditors, Tilghman, C. J., said:—

" The policy of the Bankrupt Laws is different from that of the Act of Assembly under consideration. In cases of bankruptcy, the main object is to make an equal division among *all* the creditors, and for that purpose the estate of the bankrupt is vested in his assignees by relation from the time when the bankruptcy was committed. * * * * But the object of the Act of Assembly in question was not to distribute the estate of the deceased among

*all* the creditors equally, *pro ratâ, but to define the order* in which debts of different qualities should be paid, and for that purpose the debts were divided into classes, according to their quality. The debts in the first class to be paid first, and so on according to the number of each class. But there was no intention to make any deduction from the debts of one class in order to let in those of another. Debts by bond and other specialties, which constitute the fifth class, are to be paid before debts by simple contract, included in the sixth class. But what is meant by a debt on bond ? I take it to be the sum which would be recovered by a suit on the bond; that is the principal and interest to the time of payment."

This was the decision in a case of statutory preferences, and is more closely analogous to the case in hand than any other to be imagined. We, therefore, think that in its reasoning, as well as conclusion, it is a safe guide to follow in such a case as this. Consequently, we are of opinion that the auditor and court were right in mainly governing themselves by it.

As this conclusion will, according to the auditor's report, have the effect to absorb all the assets of the bank, present or prospective, in payment of interest to note-holders, it is not necessary to discuss the question of the rights of depositors under the assignment, or what constitutes a deposit. We will, therefore, overrule the exceptions involving these questions, as immaterial, without deciding on their merits; and we also overrule the exceptions discussed above, and confirm the decree of the court below, at the costs of the appellants.