### BAIN *et al.* v. PETERS.

*(Circuit Court, E. D. Virginia. December 10, 1890.)*

NATIONAL BANK—INSOLVENCY—PAYMENT OF PREFERRED DEBT—INTEREST.

Insolvent debtors of an insolvent national bank assign, giving preferences in favor of the bank. *Quære*, whether the debt preferred shall carry interest. *Held* that, where there is nothing in the language of the assignment, or in the circumstances under which the debt was created, to negative the presumption that the debt should bear interest, and nothing in the conduct of the receiver of the national bank to estop him from claiming interest, in such a case interest must be paid.

*(Syllabus by the Court.)*

In Equity. On petition of receiver to be allowed interest upon a preferred debt, the principal of which has been paid.

*T. S. Garnett* and *W. J. Robertson*, for receiver.

*Walke & Old, James Alfred Jones*, and *Legh R. Page*, for trustees.

HUGHES, J. There are cases in which sums of money made payable by instruments defining them do not carry interest after the date when they become payable, if payment is deferred. They are cases in which the circumstances and language under and by which the sums are made payable forbid the implication that interest is to accrue. A case of this class was that of *Murphy's Appeal*, 6 Watts & S. 223, cited at bar, in which there was an assignment in trust, which provided, among other things, that the trustee should "pay and satisfy in full the sum of $5,178.32 to Placette Caze, a minor, to be paid to her, or whomsoever

may be legally entitled to receive it for her." The court refused to allow interest, on the ground that there was no recognition in the language of the grantor, or indication from the circumstances of the case, that the amount designated was a debt or claim. In the case of *Insurance Co.* v. *Delaunie*, 3 Bin. 295, there was a disputed account between plaintiff and defendant; the former claiming too much, the latter offering too little, and a suit became necessary. The court said that interest depended on the conduct of the parties, and allowed interest on the sum recovered. A strong ruling in respect to interest was that of the United States supreme court in *Early* v. *Rogers*, 16 How. 599. There a controverted case was, by agreement of parties, entered settled, and the terms of settlement were that the debtor should pay by a limited day, and the creditor agreed to receive, a less sum than that for which he had obtained judgment; and, the debtor having failed to pay on the day limited, the original judgment became revived in full force. This original judgment having omitted to name interest, and the supreme court having affirmed the judgment as it stood, the supreme court held, on the case again coming before it, that it was proper for the court below to issue an execution for the amount of the judgment and costs, leaving out interest. Numerous other cases might be cited in which interest has been disallowed on varying grounds, not easily classified; but I do not think it will be found that interest has been often, if it has ever been, disallowed, where debts have been due and demanded, and where no circumstances have existed to negative the idea that interest was to follow the principal. A number of cases may be found in which trustees under deeds of assignment have been required to pay interest on preferred debts, and to this rule depositors in national banks are not exceptions. In *National Bank* v. *Mechanics' Nat. Bank*, 94 U. S. 437, it was specifically held that a depositor in a national bank, when it suspends payment and a receiver is appointed, is entitled, from the date of his demand, to interest upon his deposit, and that such deposits, when regularly proved, stand on the same footing as judgments. Generally, as to interest, the supreme court held in *Young* v. *Godbe*, 15 Wall. 565, that, "if a debt ought to be paid at a particular time, and is not, owing to the default of the debtor, the creditor is entitled to interest from that time by way of compensation for the delay in payment." The court went so far in that case as to hold that, there being no law in the place where the contract arose (Utah) prescribing a rate of interest on such transactions as the one under consideration, nevertheless, reasonable interest must be paid by way of damages for withholding the payment of the debt.

The principle that where a debt is due and remains unpaid, the creditor has a right to claim interest upon it from the time it is due, is as firmly established by the statute law and by decisions of the court of appeals of Virginia, as it is by the decisions of the supreme court of the United States; and the question in the case at bar is resolved into the inquiry—*First*, whether the amount claimed by the receiver of the Exchange National Bank of Norfolk against the trustees under the deed of the Bains is a debt due; and, *second*, whether the receiver has, by any act

of his own, estopped himself from claiming interest upon the debt. The receiver holds notes which are thus described in that clause of the deed which gives them, with a few others, a first preference over other debts of the grantors: "Three notes of George M. Bain, Jr., as maker alone, held by the Exchange National Bank; the overdraft of the said George M. Bain, Jr., at said bank; and the overdraft of Mrs. Annie S. Hall at said bank," etc. Of the notes, one for $13,000 and another for $9,000 were past due, and one for $9,000 was to mature on the 3d of July following. The two overdrafts amounted to an aggregate sum of $11,-288.49. The principal of these sums, $42,291.65, was paid in July last. The interest which is now claimed is what accrued on the respective notes from their maturity, and on the overdrafts from April 2, 1885, when the bank failed, until the date of the payment of the principal.

There is certainly nothing in the character of this debt, or in the circumstances of its creation, or in the terms of the deed securing it, to negative the presumption of its being an interest-bearing debt; and therefore we have only to inquire whether the receiver has done anything to estop him from claiming interest upon it. It appears from the affidavit of Mr. Old, one of the trustees in the Bains deed, that affiant, shortly after the execution of that instrument, went to the receiver, and informed him that the trustees were "in part ready to pay the whole indebtedness of Bain & Bro. to the Exchange National Bank as a preferred claim, and would pay the overdrafts as soon as those accounts were audited and presented, and any note of G. M. Bain then due, and would be ready to pay the other of said notes when due." Affiant further avers that the receiver positively refused to receive said money from deponent, or to recognize him or his co-trustees in any manner whatever. The receiver, in a counter-affidavit, denies that any tender of payment of any part of any of the said indebtedness was ever made to him in any form, or that the receiver refused to receive any money from the trustee; but the receiver says that he did then refuse to recognize the said Old and his co-trustees as the lawful holders of the estate conveyed under the said deed of trust of April 6, 1885; and the receiver further says that, even if a tender had been made of the money to pay the said preferred claims, he would not have received the same, for the reason that he was then intending to bring, or had actually brought, his suit, claiming that the said deed of trust was fraudulent and void, and he was advised to do nothing that could be construed into a recognition of its validity. The suit alluded to was brought in this court on the 2d May, 1885, and, in the month of July following, the trustees in the deed of trust of the Bains filed a cross-bill, praying that their trust might be administered under the direction of the court, in which cross-bill they say that they are advised that the amounts named in the deed as preferred debts due to the Exchange National Bank should not be paid by them, because the receiver, in attacking the said deed, had estopped himself from claiming the said indebtedness, or any benefit under the said deed.

In this attitude of the issue between the receiver and the trustees the suits went on. Large funds were collected from time to time until July, 1890. The funds have been held under the direction of the court dur-

ing this whole period. For about 13 months of this time they were on deposit in a national depository, not bearing interest. For the rest of the time they have been on deposit in several banks of Norfolk, bearing interest at the rate of 3 per cent. per annum. This disposition of the funds has been made in accordance with orders of the court, and now the question is whether the preferred debt held against those trust funds by the receiver shall be decreed to have borne interest from the date at which the component parts of it severally became payable, to the date of the payment of the principal to the receiver, in July last. This court has decreed that the receiver did not become estopped from claiming this preferred debt by bringing his suit to set aside the deed. It was a debt due, and there was nothing in the circumstances under which it arose to divest it of the incident of interest which attaches presumptively to every debt. If bringing his suit did not estop the receiver from claiming his debt, with interest, I do not see that his previous refusal ·to recognize the right of the trustees to dispose of any part of the property conveyed by the trust-deed which he was about to assail could estop him. I think the receiver is entitled to interest at 6 per cent. on the preferred debt which he held, and will so decree.